UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 98-917-CIV-HOEVELER

ASSOCIATION FOR DISABLED
AMERICANS, INC., *et al.*,

      Plaintiffs,

vs.

PUBLIX SUPER MARKETS, INC.,

      Defendant.

_____/

## JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs, Jorge Luis Rodriguez, Thomas Schmokel, Robert Cohen, Vatrice Rivera, Pat Kennedy, Daniel Ruiz, on their own behalf and on behalf of all other individuals similarly situated, and the Association for Disabled Americans, Inc. (collectively, the "Named Plaintiffs") and Defendant, Publix Super Markets, Inc. ("Publix"), hereby submit their Proposed Findings of Fact and Conclusions of Law in support of a Final Order Certifying the Settlement Class and Approving the Proposed Consent Decree.

**I.**    **Proposed Findings of Fact**

    **A.**    **Procedural Background**

    1.    On April 23, 1998, the Association for Disabled Americans, Inc. ("Association for Disabled Americans"), Daniel Ruiz, Jorge Luis Rodriguez, Thomas Schmokel, Ernst Rosenkrantz, Robert Cohen, Vatice Rivera, Denny Wood and Pat Kennedy, on their own behalf and on behalf of all other individuals similarly situated, filed suit against Publix Super Markets, Inc. ("Publix"), pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181 *et*

*seq.*, alleging accessibility violations at certain Publix stores in Florida.  Complaint, ¶¶2, 3, 4, 9; D.E.# 1; Declaration of William N. Charouhis, Esq. ("Charouhis Dec."), ¶9.

2.      Publix answered the Complaint on June 17, 1998 and denied that it had violated the Americans with Disabilities Act (the "ADA").  Declaration of Carol C. Lumpkin, Esq. ("Lumpkin Dec."), ¶8.

3.      On January 21, 1999, the Named Plaintiffs requested leave of the Court to file an amended complaint to include an additional fifty-seven Publix stores in Florida, Georgia, Alabama, and South Carolina.  Amended Complaint ¶4; D.E #19.

4.      On February 18, 1999, Publix answered the Amended Complaint and denied that it had violated the ADA and denied that its stores were inaccessible to individuals with disabilities. Defendant's Answer and Affirmative Defenses to Amended Complaint; D.E. #22.

5.      On May 14, 1999, the Named Plaintiffs filed a motion seeking class certification pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.  D.E. #25.  The Court stayed the motion to allow the parties to fully explore the possibility of a comprehensive settlement agreement.  D.E. #24.

**B.      The Settlement Negotiations**

6.      Thereafter, the parties commenced extensive settlement negotiations.  (Charouhis Dec., ¶12; Lumpkin Dec., ¶11).   The Named Plaintiffs retained Michael Brennan, M.A., L.M.H.C., C.R.C., C.C.M. as their ADA expert and Publix hired James A. DiLuigi, AIA, Vice-President of Universal Designers & Consultants as its ADA Expert.  Lumpkin Dec., ¶12.  With the assistance of the respective experts, Mr. Charouhis and counsel for Publix engaged in lengthy, complicated and intense arms-length negotiations regarding accessibility enhancements

at Publix stores in Florida, Georgia, Alabama, South Carolina, and Tennessee.  Charouhis Dec., ¶¶12-13; Lumpkin Dec., ¶11.

7.    The Court held numerous status conferences and hearings to monitor the status of the settlement negotiations and to address any attendant issues that arose between the parties. D.E. #15, 23, 24, 26, 27, 28, 30, 33, 35, 37, 66, 100, 107, and 116.

8.    As part of the settlement process, the parties and the respective experts exchanged drafts of the proposed Consent Decree, including its exhibits. Charouhis Dec., ¶13; Lumpkin Dec., ¶14. The parties also attended a mediation conference before a private mediator on March 15, 2001 and an additional two-day mediation conference before the Honorable Magistrate William Turnoff on October 16, and 17, 2002. D.E. #42, 78.

9.    Additionally, as part of the ongoing negotiations and in a gesture of good faith, Publix agreed to participate in a pilot program whereby the named plaintiff's expert and Publix' expert field tested the Consent Decree documents.  Declaration of Raymond Bradley Newell ("Newell Dec."), ¶10; Declaration of James A. DiLuigi ("DiLuigi Dec."), ¶28; Declaration of Michael Brennan ("Brennan Dec."), ¶17.

10.    After first the mediation conference of March 15, 2001, Denny Wood, an individual plaintiff, breached confidentiality requirements of Local Rule 16.2.G.2 by posting details of the mediation on his website. D.E. #48.

11.    On August 28, 2001, the Court dismissed Denny Wood as a named plaintiff as a result of his breach of confidentiality and in light of his intractable conflict with the other Named Plaintiffs and potential members of the settlement class. D.E. #62.

12.    At the conclusion of the two-day mediation conference on October 16 and 17, 2002, before the Honorable Magistrate Judge William C. Turnoff, the parties reached a

3

comprehensive and global agreement as to the terms of the proposed Consent Decree. Charouhis Dec., ¶14; Joint Motion for Order Granting Preliminary Approval, D.E. #123.

13.     Ernst Rosenkrantz, after he advised Mr. Charouhis that he no longer wished to remain as a party in this action, was dismissed as a named plaintiff on August 20, 2004. D.E. #117.

### C.     Preliminary Approval of the Consent Decree and Publication of Class Notice

14.     On March 2, 2005, the Parties submitted their proposed Consent Decree along with their Joint Motion for Order Granting Preliminary Approval of the Proposed Consent Decree; Conditionally Certifying the Settlement Class; Directing Notice to the Class; and Scheduling a Fairness Hearing (the "Joint Motion"). D.E. #123.

15.     On March 8, 2005, the Court granted preliminary approval of the Consent Decree, conditionally certified the settlement class, approved the parties' Notice of Proposed Class Action Settlement and Consent Decree (the "Class Notice"), and scheduled the Fairness Hearing for July 22, 2005 at 10:00 a.m. D.E. #126.

16.     In addition to the six newspapers listed in the Consent Decree, the Court required the parties to publish copies of the Class Notice in newspapers in Alabama, Tennessee, and South Carolina. *Id.*

17.     On March 29, 2005, in accordance with the Court's Order of March 8, 2005, the Clerk of the Court executed the Class Notice. D.E. #127. The Class Notice explicitly advised the settlement class members that any objection had to be received by the Clerk of the Court and served on the parties' attorneys by June 8, 2005. *Id.* at p.5.

18.     On April 26, 2005, Publix published copies of the Class Notice in *Miami Herald, Fort Lauderdale Sun-Sentinel, Tampa Tribune, Orlando Sentinel, Florida Times-Union, Atlanta*

*Journal Constitution, Birmingham Post-Herald, Charleston Post (Courier),* and the *Nashville Tennessean.* Declaration of Al Ebeling ("Ebeling Dec."), ¶8.

19.     Paragraph 22.4.c of the proposed Consent Decree required Publix to post copies of the Class Notice in the following advocacy websites identified by the Plaintiffs: www.incanonline.net;     www.mainstream-mag.com;     www.newmobility.com; www.abilitymagazine.com;   www.afb.org/default.asp;   www.wapd.org;   www.disrights.org; www.adapt.org; www.ucpa.org/main.cfm.56; and www.istal.com/smoke.   Ebeling Dec., ¶9.   In order to comply with paragraph 22.4.c, Publix contacted each of these websites to arrange for the posting of the Class Notice.   *Id.*   Out of 10 websites, the following websites were no longer operational:   www.adapt.org;   www.disrights.org;   www.incanonline.net;   www.mainstream-mag.com; www.istal.com/smoke.   Accordingly, Publix posted the Class Notice in the following websites:     www.afb.org/default.asp;     www.wapd.org;     www.ucpa.org/main.cfm.56; www.newmobility.com; www.abilitymagazine.com. *Id.*

20.     Publix also posted complete copies of the seven-page Class Notice in each of its more than 800 stores. Each store was provided with 3 notice holders, and 10 initial copies of the Class Notice. *Id.* at ¶11.

21.     Each store manager was instructed to post complete copies of the Class Notice at the entrance to each store and to have complete copies of the Class Notice available at the Customer Service Desk by no later than April 28, 2005. *Id.* The Class Notices were posted at each store from April 28, 2005 through and until July 22, 2005. *Id.*

22.     Publix bore the costs of publishing and posting the Class Notice.   Proposed Consent Decree, §22.4.a.

CASE NO. 98-917-CIV-HOEVELER

### Filings with the Clerk of the Court

23.     On April 27, 2005, Darling Dubois mailed a one-page letter to the Clerk of the Court stating that she objected to the Consent Decree because, thirteen years ago, she had issues with the sidewalk, entry doors, and restrooms facilities at a Publix store in Mount Pleasant, South Carolina.   D.E. #132.   Ms. Dubois did not send her correspondence to any of the attorneys involved in this case.   Due to an inadvertent error, the Clerk of the Court did not docket Ms. Dubois' correspondence until July 12, 2005. *Id.*

24.     After learning of Ms. Dubois' correspondence on July 11, 2005, the parties attempted to contact her to discuss her concerns, if any, with the proposed Consent Decree. The parties, however, learned that Ms. Dubois passed away on June 11, 2005. D.E. #139.

25.     On July 6, 2005, after the June 8, 2005 objection deadline, Denny Wood and the Florida Paraplegic Association, Inc. ("Florida Paraplegic Association") filed a request to re-set the notice and objection period. D.E. #129.

26.     On July 7, 2005, the parties, filed a Joint Stipulation seeking to amend the Settlement Class Definition to exclude individuals with visual disabilities. D.E. #130.

27.     On July 14, 2005, the parties jointly moved to strike the request of Denny Wood and the Florida Paraplegic Association. D.E. #136.

28.     On July 11, 2005, once again beyond the June 8, 2005 objection deadline, the Clerk of the Court received a letter from Pauline Henderson expressing her interest in the case and requesting more information regarding the case. Ms. Henderson did not express or indicate that she had an objection to the Consent Decree. D.E. #133.

29.     On July 13, 2005 Class Counsel forwarded to Ms. Henderson a copy of the Consent Decree and Class Notice.

6

CASE NO. 98-917-CIV-HOEVELER

### D.    Summary of Consent Decree Terms

30.    The proposed Consent Decree, as modified by the Joint Stipulation as to the Settlement Class Definition, provided it is approved by the Court, provides, in summary fashion as follows:

(a)    Publix will complete the Accessibility Enhancements set forth in Exhibit 3 to the Consent Decree and modified by Exhibit 4 to the Consent Decree, for all its company-owned, leased or operated supermarkets within the timeframes set forth in Section 17 of the Consent Decree. The vast majority of the Accessibility Enhancements will be completed within four (4) years following the date of final approval of the Consent Decree.

(b)    Class Counsel and the Plaintiffs' expert will have certain opportunities to inspect a random and representative sample of Publix stores to monitor compliance with the terms of the Consent Decree;

(c)    The parties will have an alternative dispute resolution mechanism by which to address and resolve their concerns regarding the implementation of the Accessibility Enhancements;

(d)    Publix will promulgate and implement written policies regarding the provisions of Title III of the ADA and related customer services at all of its stores.

(e)    Publix will pay Class Counsel, as defined in Section 5.8 of the Consent Decree, and Plaintiffs' expert, as defined in Section 5.18 of the Consent Decree, the total amount of $160,000.00 as payment for reasonable attorneys' fees, costs, and litigation expenses, including reasonable expert fees and costs incurred in pursuing this litigation and settling this matter from the commencement of this action through the date of Final Approval of the Consent Decree.

(f)    Publix agrees to pay up to an additional $100,000.00 for the reasonable attorneys' fees, litigation expenses, and costs incurred by the Class Counsel and Plaintiffs' Expert after final approval of the Consent Decree for reasonable work performed by the Class Counsel and Plaintiffs' Expert in carrying out their respective obligations under the Consent Decree.

### E.    Findings of Fact with Respect to Rule 23(a) and 23(b)(2)

31.    The requirements for class certification are: (a) numerosity; (b) typicality; (c) commonality; and (d) adequacy of representation. Fed.R.Civ.P. 23(a); *Amchen Products v.*

*Windsor*, 521 U.S. 591, 613 (1997); *Association for Disabled Americans v. Amoco Oil Co., Inc.*, 211 F.R.D. 457, 461 (S.D. Fla. 2002); *Access Now, Inc. v. Claire's Stores, Inc.*, 2002 WL 1162422 (S.D. Fla. May 7, 2002); *American Disability Association, Inc. v. BFS Retail & Commercial Operations, LLC*, Case Number 01-6529-CIV-HUCK, Final Judgment Approving Class Certification (S.D. Fla. October 30, 2002); *Access Now, Inc., v. Ambulatory Surgery Center Group, Ltd.*, 197 F.R.D. 522, 525 (S.D. Fla. 2000).

### *Numerosity*

32.     The Court takes notice that according to the latest U.S. Census Bureau's Population Report issued in February of 2001, as of 1997, 52.6 million individuals (19.7 percent of the population) had some level of disability and 33.0 million (12.3 percent of the population) had a severe disability. Exhibit E to Joint Motion for Preliminary Approval of Consent Decree. The Court further recognizes that, according to the same report, among the population 15 years old and over, 2.2 million used a wheelchair and another 6.4 million used an ambulatory aid such as a cane, crutches, or a walker. *Id.*

### *Commonality*

33.     To meet the commonality requirements of Rule 23(a)(2), there must be issues of law or fact common to the class. *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 639 (D. Colo. 1986). However, every issue need not be common to every member of the class to satisfy Rule 23(a)(2). *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

34.     The commonality requirement can be met by a single common issue and is satisfied if the claims of the plaintiff and the members of the class are based on the same legal or remedial theory. *Id.; see, also, Jospeh*, 109 F.R.D. at 639-40.

CASE NO. 98-917-CIV-HOEVELER

35.     In the present case, the claims of the Named Plaintiffs and the members of the settlement class are in fact based on the same legal or remedial theory – denial of the full and equal enjoyment of the goods, services, facilities, and privileges present and/or offered at Publix stores in alleged violation of Title III of the ADA.  Amended Complaint, ¶11.

36.     Specifically, in order to obtain injunctive relief pursuant to Title III of the ADA, the Named Plaintiffs and settlement class members must identify barriers to access at the Publix stores and demonstrate that the removal of such barriers is required by law.  *Access Now, Inc. v. South Florida Stadium Corp.*, 161 F.Supp.2d 1357, 1363 (S.D. Fla. 2001).

***Typicality***

37.     To satisfy the typicality requirement of Rule 23(a), the claims of the Named Plaintiffs need not be identical to the claims of the settlement class, so long as the claims of the Named Plaintiffs are "similar and/or arise from the same remedial and legal theories." *Ambulatory Surgery*, 197 F.R.D. at 528.

38.     The Named Plaintiffs and members of the Association for Disabled Americans, are individuals with mobility, dexterity, and hearing disabilities.  Declaration of Vatrice Rivera ("Rivera Dec."), ¶6; Declaration of Jorge Luis Rodriguez ("Rodriguez Dec."), ¶6.

39.     Pursuant to the Consent Decree, the settlement class is defined to include individuals with mobility, dexterity, and hearing disabilities in Florida, Georgia, Alabama, Tennessee and South Carolina.  Consent Decree, §5.24.

40.     Accordingly, in visiting the Publix stores, the Named Plaintiffs have allegedly encountered the same or similar barriers to access as those barriers to access that would be, or have been, encountered by members of the settlement class.

***Adequate Representation – the Named Plaintiffs***

41.     The Named Plaintiffs have an overriding common interest with the members of the settlement class – the removal of alleged access to barriers at Publix stores for individuals with mobility, dexterity and hearing disabilities.

42.     The Named Plaintiffs are individuals with disabilities who have visited Publix Stores and have, supposedly, encountered barriers to access at such stores.  Rivera Dec., ¶8; Rodriguez Dec., ¶8.

43.     The Named Plaintiffs have expressed an interest in continuing to visit, or attempting to visit, Publix stores. *Id.*

44.     The Association for Disabled Americans is a non-profit corporation whose members are comprised of individuals with mobility, dexterity, hearing, and visual disabilities. Rivera Dec., ¶6; Rodriguez Dec., ¶6.

45.     The primary purpose of the Association for Disabled Americans is to ensure that: (i) public places of accommodation are accessible to and useable by its members, (ii) its members will not be excluded from participation in or denied the benefits of the services, programs or activities of public accommodations; and (iii) its members are not discriminated against because of their disabilities.  (Amended Complaint, ¶2).

46.     Prior to and throughout the pendency of this lawsuit and its ensuing settlement negotiations, Plaintiffs Vatrice Rivera and Jorge Luis Rodriguez have been in contact with Class Counsel and have advised him of their accessibility concerns at Publix stores.  Rivera Dec., ¶9; Rodriguez Dec., ¶9.

47.     Plaintiffs attended the first mediation conference on March 15, 2001.  Rivera Dec., ¶10; Rodriguez Dec., ¶10.

48.     Plaintiffs Jorge Luis Rodriguez and Vatrice Rivera attended the second mediation conference before the Honorable Magistrate William C. Turnoff with full authority to negotiate and resolve the matter.  Rivera Dec., ¶10; Rodriguez Dec., ¶10.

49.     The Named Plaintiffs have been involved in numerous other lawsuits pursuant to Title III of the ADA and, in this District, filed suit, and settled on a class action basis, a lawsuit against Amoco Oil Company.  *See Amoco Oil*, 211 F.R.D. at 459.

50.     The Named Plaintiffs are not entitled to any pecuniary relief as there are no damage claims under Title III of the ADA.  28 C.F.R. §36.501(b).

*Adequacy of Representation – Class Counsel*

51.     William N. Charouhis, Esq., who is AV rated and admitted to practice before the United States District Court for the Southern, Middle, and Northern Districts of Florida and the U.S. Supreme Court, has extensive experience in litigation issues regarding the ADA.  Charouhis Dec., ¶5.

52.     Mr. Charouhis has litigated in excess of 250 ADA cases during the past eight years, including several class actions.  *Id.*  Mr. Charouhis has previously represented the Named Plaintiffs in a number of other matters related to the enforcement and prosecution of the rights afforded to individuals with disabilities under the ADA.  *Id.*

53.     Prior to filing the present suit, Mr. Charouhis, with the assistance of Michael Brennan, Plaintiffs' ADA expert, investigated the alleged accessibility violations at various Publix stores.  *Id.* at ¶9.

54.     Mr. Charouhis was involved in the extremely detailed and intense arms-length negotiations that, after several years, culminated in the parties' proposed Consent Decree.  *Id.* at ¶¶12-13.

55.     Mr. Charouhis participated in the first mediation conference before a private mediator and the two-day mediation conference before the Honorable Magistrate William C. Turnoff. *Id.* at ¶14.

56.     No one has objected to Mr. Charouhis' adequacy as Class Counsel.

**E.     Findings of Fact as to the *Bennett* Factors**

*Likelihood of Success at Trial*

57.     Publix presently has more than 800 stores. Newell Dec., ¶4.

58.     Twenty-six of the forty-eight accessibility enhancements set forth in Exhibit 3 to the Consent Decree would not be available to the Named Plaintiffs outside the context of the present settlement because they are not required by law. *Id.* at ¶14.

59.     Trial on the merits would thus involve proof of a *prima facie* Title III ADA violation at over 800 stores in five states, each of which would involve separate discovery, evidentiary proof and legal arguments to determine, in either a single trial, a series of trials, or a series of cases, what barriers to access existed at the stores and whether, and to what extent, any modifications were legally required.

60.     Other disability advocacy groups have failed to prevail in this District with regard to Title III ADA lawsuits in a non-class action setting. *See, e.g., South Florida Stadium Corporation*, 161 F.Supp.2d at 1368.

***Range of Possible Recovery***

61.     Plaintiffs could receive zero, as was the case in *South Florida Stadium Corporation. Id.*

62.     Plaintiffs could amass proof at each of the more than 800 stores and still receive a fraction of the relief sought.

63.     Plaintiffs could obtain injunctive relief requiring post-ADA Publix stores to comply with all the applicable requirements set forth in the ADAAG and requiring pre-ADA Publix stores to remove all of the alleged barriers to access where removal is readily achievable but never obtain the additional twenty-six accessibility enhancements that are not required by law. *Id.* at 1364.

### *Point on or Below Range of Possible Recovery at which Settlement is Fair*

64.     Twenty-six of the forty-eight accessibility enhancements that Publix has agreed to implement pursuant to Exhibit 3 of the Consent Decree are not presently required by the ADA or the ADAAG.  Newell Dec., ¶8; DiLuigi Dec., ¶40; Brennan Dec., ¶20.  Publix' point-of-sale devices contain tactually-discernible keypads.  Newell Dec., ¶9.

65.     Pursuant to Exhibit 3A of the Consent Decree, where Publix determines that it cannot complete one of the accessibility enhancements set forth in Exhibit 3 of the Consent Decree, Publix will undertake the alternative measures set forth in Exhibit 3A in order to provide accessibility and usability to the affected elements.  Proposed Consent Decree, §14.4; DiLuigi Dec., ¶22; Brennan Dec., ¶14.

66.     The Consent Decree imposes objective measurement criteria for ensuring access to pre-ADA stores instead of requiring the settlement class members to identify barriers to access and prove that the removal of such barriers is readily achievable.  DiLuigi Dec., ¶41; Brennan Dec., ¶21.

67.     The Named Plaintiffs have achieved most, if not all, of the relief sought in their Amended Complaint in a far more expedited manner than if they had pursued individual actions against each of the more than 800 Publix stores. *Compare* Amended Complaint, ¶19 and Exhibit 3 to the Proposed Consent Decree.

13

***Complexity, Expense and Duration of Litigation***

68.     The lawsuit was initially filed on April 23, 1998.  D.E. #1.

69.     The Plaintiffs' Motion for Class Certification was filed on May 14, 1999.  D.E. # 25.

70.     The settlement negotiations were complex, protracted and drawn-out as the parties exchanged multiple drafts of the proposed Consent Decree and attempted to address the possible implementation of accessibility enhancements at each of the Publix stores in five different states.  Newell Dec., ¶7; DiLuigi Dec., ¶¶21-28; Brennan Dec., ¶¶7-17; Charouhis Dec., ¶¶12-13; Lumpkin Dec., ¶¶11-12.

71.     Throughout the course of the settlement negotiations, the parties sought to address (i) the alleged accessibility issues raised by the Plaintiffs while shopping at Publix and the fair and plausible solutions thereto; (ii) the conditions of Publix' pre-ADA and post-ADA stores and possible accessibility enhancements at the different types of stores; (iii) Publix' substantial and consistent willingness to implement accessibility enhancements at it stores that are not presently required by the ADA or any of its implementing regulations; and (iv) the implementation and application of various technical and architectural aspects of the Consent Decree.  DiLuigi Dec., ¶16; Brennan Dec., ¶8.

72.     The settlement negotiations were additionally complex because the shopping experience at Publix is comprised of numerous individual interactions for different types of services at different locations within each store.  Examples include the delicatessen, the bakery, the pharmacy, the flower shop, the meat counter, the traditional grocery aisles, the check-out lanes, and the self-service check-out lanes.  In turn, each service involves different architectural and structural elements. DiLuigi Dec., ¶19.

### *Substance and Amount of Opposition to Settlement.*

73.    No objections to the terms of the Consent Decree were filed.

74.    Darling Dubois' correspondence indicated that she "objected" to the Consent Decree but did not identify which terms, if any, she considered problematic.  D.E. #132. Moreover, the concerns she expressed from her shopping experiences thirteen years ago are all addressed by Exhibit 3 to the Consent Decree.

75.    Pauline Henderson did not object to the terms of the Consent Decree.  D.E. #133. Rather, she merely sent in a request for additional information.  A copy of the Consent Decree and Class Notice were sent to her in response.  *Id.*

76.    Denny Wood, on behalf of himself and, purportedly, the Florida Paraplegic Association filed his request to re-set the notice period 28 days after the objection deadline of June 8, 2005. D.E. #129.

77.    The U.S. Department of Justice, which is responsible for the enforcement of Title III of the ADA, did not object to the proposed Consent Decree.

78.    Various federally-funded national advocacy groups that participated in other Title III ADA class actions in this District did not objected to the proposed Consent Decree.

### *State of Proceedings at which the Settlement was Reached*

79.    Settlement negotiations lasted for approximately four years.  Newell Dec., ¶7; DiLuigi Dec., ¶16; Brennan Dec., ¶8; Charouhis Dec., ¶¶12-13; Lumpkin Dec., ¶¶11, 15.

80.    During the course of the settlement negotiations, Class Counsel, counsel for Publix, Plaintiffs' ADA Expert and Publix' ADA Expert exchanged informal discovery and numerous drafts of the proposed Consent Decree and its attendant exhibits. Lumpkin Dec., ¶11.

CASE NO. 98-917-CIV-HOEVELER

81.     In 2001, the parties, with full authority to negotiate and settle, attended a day-long mediation conference before a private mediator and, in 2002, a second, two-day mediation conference before the Honorable Magistrate William C. Turnoff before they were able to finalize the terms of the proposed Consent Decree.  Lumpkin Dec., ¶15; Charouhis Dec., ¶14.

## II.     Proposed Conclusions of Law

### A.     The Plaintiffs Have Standing to Prosecute this Action

1.      A standing inquiry has two components: (a) compliance with minimum constitutional requirements; and (b) prudential considerations of judicial self-government. *Cuban American Bar Ass'n v. Christopher*, 43 F.3d 1412, 1423 (11th Cir. 1995).

2.      To satisfy the "irreducible constitutional requirements" of standing, the Named Plaintiffs must demonstrate that: (a) they suffered an "injury in fact"; (b) that their injury is fairly traceable to the challenged action(s) of the defendant; and (c) that there is a substantial likelihood that the requested relief will remedy the alleged injury in fact.  *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 120 S.Ct. 1858, 1861-62 (2000).

3.      Additionally, plaintiffs seeking injunctive relief must allege a "real and immediate – as opposed to merely conjectural or hypothetical threat of future injury." *Wooden v. Board of Regents of University System of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001).

4.      An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

5.     The individual Named Plaintiffs in this action have standing to prosecute this lawsuit as they have identified themselves as Publix shoppers, have allegedly encountered barriers to access at the Publix stores and have expressed an interest in continuing to shop at Publix stores. Rivera Dec., ¶8; Rodriguez Dec., ¶8; Amended Complaint, ¶3.

6.     The Association for Disabled Americans also has standing.   The individual Named Plaintiffs who are members of the association, or were members when the present suit was filed, have standing to sue in their own right.  The association's interest in ensuring that each of the Publix stores is accessible to individuals with disabilities is reflective of its purpose to ensure that places of public accommodation are accessible to, and usable by, individuals with disabilities.  (Amended Complaint, ¶2).  Lastly, because the relief requested is injunctive in nature, the individual participation of the association's members is not required in this lawsuit. *See American Disability Ass'n v. Di-Mi Investment Corp.*, Case No.: 01-6300-CIV-DIMITROULEAS, Order Denying Motion to Dismiss as to Standing (S.D. Fla. July 13, 2001).

### B.     The Parties Provided Proper Notice

7.     A district court has broad discretion in determining the kind of notice to employ in alerting settlement class members to the proposed Consent Decree, attendant opportunity to object, and the Fairness Hearing. *Battle v. Liberty Nat'l Life Ins. Co.*, 770 F.Supp. 1499, 1520 (N.D. Ala. 1991), *aff'd*, 974 F.2d 1279 (11th Cir. 1992).

8.     Notice of a proposed settlement "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

17

9.      As long as the method of notice is reasonable, due process does not require that every class member receive actual notice of the proposed settlement. *See, e.g., Silber v. Mabon,* 18 F.3d 1449, 1453-4 (9th Cir. 1994)(holding that standard for notice of a proposed settlement is "best practicable," not "actually received"); *In re VMS Ltd. Partnership Sec. Litig.,* 1995 WL 35572, *1-2 (N.D. Ill. June 12, 1995 ("[d]ue process and Rule 23 merely require good faith compliance with the presumptively valid notice procedures ordered by the court").

10.     Additionally, Rule 23(b)(2) class actions contain no express requirements of any kind governing the form of the notice, thus leaving it to the Court's discretion to determine what notice should be given. *Cf.* Fed.R.Civ.P. 23(c)(2).

11.     In the present case, in light of the substantial number of individuals with disabilities, individual notice to each settlement class member is not practical or possible. Accordingly, notice by publication is sufficient. *See West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1090 (2d Cir. 1971), abrogation recognized on other grounds by 75 P.3d 99 (Ariz. 2003)(notice by publication is customary substitute in class cases where it is not reasonably possible or practicable to give individual notice); *Alliance for ADA Compliance Inc. et al. v. Circle K Stores,* Case No.: 03-10001-CIV-KING (S.D. Fla. Mar. 15, 2005)(Findings and Conclusions, ¶¶49-50).

12.     On July 15, 2005, the Court concluded that the notice provided by the parties to the settlement class members was sufficient.

13.     The allegations of Denny Wood and the Florida Paraplegic Association that proper notice was not provided are hereby overruled.

14.     The July 6, 2005 filing by Denny Wood was untimely as it was filed 28 days after the objection deadline of June 8, 2005. Second, the parties had no obligation to individually

notify Mr. Wood or the Florida Paraplegic Association of the June 8, 2005 deadline. Copies of the notice approved by the Court was published in 9 newspapers, including the *Miami Herald*, the *Fort Lauderdale Sun Sentinel*, posted on 5 advocacy websites for individuals with disabilities; and each of the more than 800 Publix stores. Therefore, the parties' efforts regarding notice were substantially in excess of the minimum standard required by law - publication.

15. The Court also takes judicial notice of the fact that Mr. Wood was previously a party to this action who knew of, and had access to, Class Counsel.

16. Accordingly, the Court deems Wood and the Florida Paraplegic Association to have actually received copies of the Class Notice. *See, e.g., Aide v. Chrysler Fin. Corp.*, 1997 WL 829205, *2 (Sup. Ct. Ind. Sept. 5, 1997). Their request for a re-issuance of the notice and rescheduling of the Fairness Hearing is thus denied.

17. The Court therefore concludes that the notice provided by the parties to the settlement class members, through publication in 9 newspapers in 5 states; posting on 5 websites; and posting at each Publix store, apprised the settlement class members of the pendency of the proposed Consent Decree and afforded them an opportunity to present their objections. Thus, the notice was practical and more than properly sufficient to comply with the due process requirements of Rule 23. *See Chas. Pfizer & Co.*, 440 F.2d at 1090; *Circle K Stores*, Findings and Conclusions, at ¶50.

### C.     The Parties' Joint Stipulation is Ratified and Approved

18. The American Council for the Blind did not object to the Consent Decree.

19.     Nevertheless, in order to address their concerns, On July 7, 2005, the parties filed a Joint Stipulation seeking to amend the Settlement Class Definition to exclude individuals with visual disabilities.

20.     Specifically, the parties jointly stipulated that Section 5.23 should be amended to read as follows:

> **"Settlement Class"** means all persons with mobility, dexterity, and/or hearing disabilities, as defined by the ADA or under any state or local law within the Geographic Area, who have or claim they have, or will have or will claim they have been, prior to and during the term of this Decree the right to assert a claim under Title III of the ADA and/or state or local statutes regarding accessibility against PUBLIX.

21.     Excluding the visually impaired from the Settlement Class definition will not adversely affect either the remaining settlement class members or the visually impaired.

22.     Accordingly, the parties were not required to provide supplemental notice of the amended Settlement Class Definition. *See, e.g., Harris v. Graddick*, 615 F.Supp. 239, 244 (M.D. Ala. 1985)(holding that additional notice of the proposed amendments was not required where the amendment was narrow and it was clearly apparent that the interest of the classes were not substantially impaired by the amendments); Manual for Complex Litigation, §21.61 (additional notice and a new opportunity to object should only be required if the terms of the settlement are subject to substantial changes adversely affecting some class members).

23.     The parties' Joint Stipulation of July 7, 2005 is thus hereby ratified and approved.

**D.      The Proposed Settlement Class Satisfies the Requirements of Rule 23**

24.     Pursuant to Section 5.24 of the Consent Decree and the parties' Joint Stipulation of July 7, 2005, the Settlement Class is now defined to include individuals with mobility, dexterity and hearing disabilities in Florida, Georgia, Alabama, Tennessee, and South Carolina.

25.    In certifying a proposed settlement class, the trial court must determine "whether a proposed class has sufficient unity so that absent members can fairly be bound by the decisions of class representatives." *Amchem Prods.*, 521 U.S. at 613.

26.    District courts that have been presented with putative classes of individuals with disabilities as defined by the ADA have repeatedly held that such classes are sufficiently identifiable for purposes of satisfying the preliminary requirement of *Amchem Prods.*   Such courts have also held that class actions brought pursuant to Title III of the ADA satisfy the other perquisites for class certification under Rules 23(a) and 23(b)(2).   *Circle K Stores*, Findings and Conclusions, at ¶31(certifying nationwide class of individuals with mobility and dexterity disabilities); Amoco Oil, 211 F.R.D. at 476 (certifying class of individuals with disabilities who alleged lack of access at BP/Amoco gas stations); *BFS Retail*, Final Judgment Approving Class Certification (certifying nationwide class of individuals with mobility and dexterity disabilities who alleged lack of access at retail tire and service stores); *Ambulatory Surgery Ctr. Group.*, 197 F.R.D. at 529-30 (certifying class consisting of all disabled individuals in the U.S. against medical care facilities for alleged failure to comply with Title III of the ADA); *Colorado Cross-Disability Coalition v. Taco Bell Corp.*, 184 F.R.D. 354 (D. Colo. 1999)(certifying class of individuals who use wheelchairs and scooters); *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 460 (N.D. Cal. 1994), *modified*, 158 F.R.D. 439, 460 (N.D. Cal. 1994)(certifying class of individuals with disabilities who used wheelchairs or walking aids).

27.    Based on the foregoing case law, as the present action seeks to certify a settlement class of individuals with mobility, dexterity and hearing disabilities in five states for alleged Title ADA violations at Publix stores, the Court concludes that the settlement class, as defined by

Section 5.24 of the Consent Decree and the parties' Joint Stipulation of July 7, 2005, satisfies the initial requirements of *Amchem Prods.*

**E.    The Settlement Class Satisfies the Requirements of Rule 23(a)**

28.    In order to certify the proposed settlement class, the Court must next determine that the proposed class satisfies each of the requirements of Rule 23(a). *Amchem Prods.*, 521 U.S. at 613; *Ambulatory Surgery Center*, 197 F.R.D. at 525.

*Numerosity*

29.    Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1245 (11th Cir. 2004). In rendering such a determination, the court must consider the class size, the geographic diversity of the class members, the relative ease or difficulty in identifying the members of the class, the financial resources of the class members, and the class members' ability to institute individual lawsuits. *Ambulatory Surgery*, 197 F.R.D. at 525.

30.    The Court can use common sense assumptions to render a finding that joinder is impracticable. *Civic Ass'n of the Deaf of New York City, Inc. v. Guiliani*, 915 F.Supp. 622, 632 (S.D.N.Y. 1996); *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978)(approving the use of census data in determining that the numerosity requirement has been satisfied).

31.    The statistical data from the U.S. Census Bureau regarding the number of individuals with disabilities in the United States as of 1997 illustrates that the settlement class is most likely in the millions, thereby nullifying joinder as a practicable alternative to a class.

32.    Additionally, although the existence of an identifiable class is a prerequisite to a class action, the exact number of the potential class members does not have to be established. *Padron v. Feavor*, 180 F.R.D. 448, 454 (S.D. Fla. 1998). However, the class must be

sufficiently defined so that potential class members can be identified. *Ambulatory Surgery*, 197 F.R.D. at 525-26.

33.     Because the settlement class in the present case has been defined to include all individuals with mobility, dexterity and hearing disabilities in Florida, Georgia, Alabama, Tennessee, and South Carolina, whether a particular individual is a member of the settlement class can be readily ascertained. *Id.*

34.     Title III of the ADA does not provide for an award of monetary damages. 28 C.F.R. §36.501(b). As such, there is tremendous cost, expense and risks for individuals with disabilities to engage in protracted litigation in multiple jurisdictions, especially in the present case where Publix has over 800 stores in 5 different states. *Circle K Stores*, Findings of Fact and Conclusions of Law at ¶37; *Ambulatory Surgery*, 197 F.R.D. at 526; *Haymon v. Williams*, 795 F.Supp. 1511, 1520 (M.D. Fla. 1992).

35.     In light of the substantial number of individuals with disabilities in the United States, the ease with which settlement class members can be identified, the lack of financial resources of the class members and the individual class members' ability to institute individual lawsuits, the settlement class proposed by the parties satisfies the numerosity requirement of Rule 23(a)(1). *Ambulatory Surgery*, 197 F.R.D. at 525-26.

***Commonality***

36.     Commonality requires the presence of issues of fact and law that are common to the class. *Joseph.*, 109 F.R.D. at 639. The requirement can be met by a single common issue if the claims of the Named Plaintiffs and members of the class are based on the same legal or remedial theory. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *Joseph*, 109 F.R.D. at 639-40.

37.     In the present case, the common factual and legal issue is Publix' alleged non-compliance with the accessibility requirements set forth in Title III of the ADA. *Ambulatory Surgery*, 197 F.R.D. at 526 (citations omitted)("The alleged existence of common discriminatory practices on the part of the defendants satisfies the Rule 23 requirement of commonality. There need only be the allegation of a common discriminatory practice [in order to satisfy Rule 23(a)(2)]"); *BFS Retail*, Final Judgment Approving Class Certification (finding common questions of fact and law in an ADA class action where individuals with disabilities challenged alleged inaccessible retail tire stores); *Amoco Oil*, 211 F.R.D. at 463 ("Plaintiffs' allegations of common discriminatory practices of ADA noncompliance [at defendant's gas stations], as a matter of law, satisfy the requirement that the representative plaintiffs 'share at least one question of fact or law with the grievances of the protected class"); *Arnold*, 158 F.R.D. at 448-49 (finding common questions of fact and law in class action against supposedly inaccessible movie theatres).

38.     In the present case, the Named Plaintiffs have allegedly suffered the same alleged lack of accessibility as the members of the settlement class and seek the same injunctive relief pursuant to the same statutory mechanism – Title III of the ADA. *Amoco Oil*, 211 F.R.D. at 463. Accordingly, the Court concludes that the proposed settlement class satisfies the requirements of commonality set forth in Rule 23(a)(2).

### Typicality

39.     The claims of the Named Plaintiffs and the claims of the settlement class members must be "similar and/or arise from the same remedial and legal theories." *Ambulatory Surgery*, 197 F.R.D. at 528. Typicality is not a difficulty standard to satisfy. *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993). If the individual class members were to pursue

independent claims that are similar, if not identical, to the claims asserted by the Named Plaintiffs, then the typicality requirement of Rule 23(a)(3) has been discharged.  *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 426 (5th Cir. 1997).

40.     The claims of the Named Plaintiffs in this action are extremely similar, if not identical, to the claims of the settlement class members.  Both groups of individuals would be asserting the same claim, to wit, that Publix has failed to comply with the accessibility requirements mandated by Title III of the ADA.  *Amoco Oil*, 211 F.R.D. at 464 ("the claims of the class representatives are truly identical to those of absent class members because each class representative seeks to make Defendant's gasoline stations fully accessible as required by the ADA").

### *Adequacy of Representation – the Named Plaintiffs*

41.     Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class."  This requirement centers on questions of whether "plaintiff's counsel is qualified, experienced, and generally able to conduct the proposed litigation, and whether plaintiffs have interest antagonistic to those of the rest of the class."  *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).  Absent evidence to the contrary, adequacy of representation is presumed.  *Cook v. Rockwood International Corp.*, 151 F.R.D. 378, 386 (D. Colo. 1993).  Moreover, the Court is generally entitled to rely upon the judgment of counsel for the parties and should hesitate to substitute its own judgment for that of the attorneys.  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

42.     No one has objected to the adequacy of representation by the Named Plaintiffs and the Court is unaware of any evidence that would indicate a conflict among the Named Plaintiffs or between the Named Plaintiffs and the settlement class members.  The Court takes

judicial notice that, in this district, the Named Plaintiffs have prosecuted, and continue to prosecute, many other accessibility lawsuits pursuant to Title III of the ADA, including a class action against Amoco Oil in 2002.

43.     The Named Plaintiffs will not, and have not, received any financial reward for their roles and the Named Plaintiffs have requested and obtained injunctive relief to enhance accessibility at Publix' stores, the very same relief that the settlement class members would be entitled to request if they pursued their own individual actions against Publix.

44.     The Court therefore concludes that the Named Plaintiffs have been, and continue to act, as adequate class representatives.

### Adequacy of Representation – Class Counsel

45.     As with the named representatives, no objections have been filed against the adequacy of Mr. Charouhis as Class Counsel.  Similarly, no one has suggested any collusion between the Class Counsel and Counsel for Publix.

46.     Mr. Charouhis has ample experience in this area of the law as he has prosecuted more than 250 ADA lawsuits.  Mr. Charouhis also has prior experience as Class Counsel as he is presently fulfilling that exact same role in the *Amoco Oil* class action lawsuit filed by the Association for Disabled Americans and certified and approved in 2002 by the Honorable Judge Alan S. Gold.  Mr. Charouhis was also Class Counsel in the *Circle K* action.

47.     Mr. Charouhis was intimately involved with this lawsuit since its inception and actively participated in the arduous and arms-length settlement negotiations that spanned over multiple years and required two mediation conferences. *Amoco Oil*, 211 F.R.D. at 459; *Circle K*, Findings and Conclusions, ¶42.

26

48.     Mr. Charouhis' involvement in the complex settlement negotiations on behalf of the Named Plaintiffs and absent settlement class members; his work with Michael Brennan, as the Named Plaintiffs' ADA expert; his extensive experience with Title III ADA lawsuits; and his ongoing role as Class Counsel in another ADA class actions that were certified in this District, leads the Court to conclude that Mr. Charouhis is an adequate legal representative for the Named Plaintiffs and absent settlement class members. *Amoco Oil*, 211 F.R.D. at 464-65; *Circle K*, Findings and Conclusions, ¶42

**F.     The Settlement Class Satisfies Rule 23(b)(2)**

49.     In addition to satisfying the requirements of Rule 23(a), at least one of the alternative requirements of Rule 23(b) must also be satisfied in order for the settlement class to be certified. *Klay*, 382 F.3d at 1245.

50.     Certification pursuant to Rule 23(b)(2) is appropriate where

> the party opposing the class has acted or refuse to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2).

51.     The Advisory Committee Notes to the 1966 amendments to Rule 23 demonstrate the propriety of certifying a Rule 23(b)(2) in this case. "Illustrative [of Rule 23(b)(2) classes] are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." *See, also, Ambulatory Surgery*, 197 F.R.D. at 529 (same). Thus, Rule 23(b)(2) has generally been invoked in cases where injunctive relief is the primary or exclusive relief sought. *Id.*

52.     The requirements of Rule 23(b)(2) are satisfied in the instant case by the allegations contained and the relief sought in Plaintiffs' Amended Complaint. Specifically, the

Named Plaintiffs' allegations describe Title III ADA violations and purported discriminatory practices by Publix to which the Named Plaintiffs and settlement class members alleged they have been, and continue to be, subjected. Amended Complaint, ¶¶9-15.

53.     Additionally, the relief sought by the Named Plaintiffs is exclusively injunctive relief. *Amoco Oil*, 211 F.R.D. at 465. "[T]he Class Plaintiffs sought exclusively injunctive relief based upon their allegation of class-based discrimination for non-compliance with a federal civil rights statute. This case fits squarely within the ambit of cases for which Rule 23(b)(2) was created." *Id.*

54.     The proposed Consent Decree in the present case provides injunctive relief and is based on class-wide purported discrimination for Publix' supposed non-compliance with a federal civil rights statute – the ADA. Accordingly, class certification pursuant to Rule 23(b)(2) is appropriate.

###     G.     The Proposed Consent Decree is Fair, Adequate, and Reasonable

55.     Rule 23(e) requires judicial approval of any class action settlement. Fed.R.Civ.P. 23(e). Court approval should be granted provided the settlement is fair, adequate and reasonable, and is not the production of collusion between the parties. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In light of the strong public interest in favor of class action settlements, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977), the Court's determination that a class action settlement satisfies the *Bennett* factors lies within the trial court's discretion and will not be overturned absent a clear abuse of discretion. *Bennett*, 737 F.2d at 986.

56.     To determine whether a proposed class action settlement is fair, adequate, and reasonable, the Court must consider the following factors:  (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at

CASE NO. 98-917-CIV-HOEVELER

which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.*

57.     Moreover, in evaluating the proposed Consent Decree, the Court must not try the case on the merits. *Cotton*, 559 F.2d at 1330. Instead, the Court should rely on the judgment of experienced counsel and, absent proof of fraud, should not substitute its own judgment for that of counsel. *Id.*

58.     Lastly, in evaluating the fairness of the proposed settlement, "it should [not] be forgotten that compromise is the essence of a settlement. The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] granted." *Id.* (citations omitted).

### *Likelihood of Success at Trial*

59.     A trial on the merits would be a monumental undertaking without any guarantee of success to the Named Plaintiffs.  Outside the context of a class settlement, Publix would object to class certification thereby requiring the Named Plaintiffs to litigate their claims on a store by store basis.  As a result, plaintiff's *prima facie* burden would be enormous.

60.     As set forth in *South Florida Stadium Corporation*, the Named Plaintiffs would have to prove the existence of barriers to access at each pre-ADA Publix store and then demonstrate that the removal of such barriers is readily achievable.  Even if the Named Plaintiffs were able to identify technical violations at some of the stores, they might still not prevail. *South Florida Stadium Corp.*, 161 F.Supp.2d at 1368.  With regard to the post-ADA stores, the Named Plaintiffs would similarly have to demonstrate the denial of access to individual with disabilities and Publix' failure to comply with the accessibility requirements of the ADA.

61.     Publix' defenses would also have to be thoroughly litigated in each instance, leading to vigorous and complicated disputes over almost every aspect of the parties' respective positions.  The resolution of such disputes, on a store-by-store basis, or in the context of multiple individual lawsuits strewn throughout five different states would extend any resolution beyond the term of the parties' proposed Consent Decree.

62.     During this period of time, the Named Plaintiffs could not possibly gain access equal to or greater than that guaranteed by the proposed settlement as, by virtue of the Consent Decree, Publix has agreed to twenty-six accessibility enhancements that are not presently required by law.   Absent the settlement,   Publix would not be required to implement such accessibility enhancements, even if the Named Plaintiffs were to prevail at trial.

63.     The complexity of the Named Plaintiffs' claims and defendant's defenses, the sheer number of stores and the length of time that would be involved in a store-by-store litigation makes the likelihood of Named Plaintiffs' success at trial highly uncertain.

### *Range of Possible Recovery*

64.     As this action seeks injunctive relief, recovery could range from a finding of no liability to a finding of partial or complete liability for each of the more than 800 Publix stores.

65.     In the best case scenario, after expending enormous time, effort, and resources, the Named Plaintiffs could obtain injunctive relief requiring post-ADA Publix stores to comply with all the applicable requirements set forth in the ADAAG and requiring pre-ADA Publix stores to remove all of the barriers to access where removal is readily achievable. *South Florida Stadium Corp.*, 161 F.Supp.2d at 1363-64.

*Point on or Below the Range of Possible Recovery at Which Settlement is Fair*

66.     As set forth in Exhibit 3 to the proposed Consent Decree, Publix has agreed to forty-eight accessibility enhancements.  Twenty-six of the accessibility enhancements are not presently required by the ADA or the ADAAG.

67.     Additionally, although the ADA and the ADAAG are presently silent on this issue, Publix already has point of sale devices with tactually-discernible keypads.

68.     Thus, even if the Named Plaintiffs were to sue Publix on an individual basis and completely prevail on liability, they could not, as a matter of law, obtain twenty-six accessibility enhancements that Publix has agreed to provide as part of the Consent Decree.

69.     Where the accessibility enhancements provided by Exhibit 3 are not feasible, Publix has agreed to alternative enhancements, as set forth in Exhibit 3A to the proposed Consent Decree.  If the Named Plaintiffs were to sue Publix on a store-by-store basis, or on a class basis, and prevail, they would not obtain such relief.

70.     Additionally, with respect to pre-ADA stores, the accessibility enhancements set forth in Exhibit 3 obviate the need for Named Plaintiffs to identify barriers to access and to demonstrate that the removal of such barrier is required by law.   Outside the context of a negotiated settlement, the Named Plaintiffs would be required to discharge such a burden with regard to each Publix store. *South Florida Stadium Corp.*, 161 F.Supp.2d at 1363-64.

71.     Lastly, the relief that the Named Plaintiffs and settlement class members are receiving is in excess of that requested in the Amended Complaint as twenty-six of the forty-eight accessibility enhancements set forth in Exhibit 3 to the Consent Decree are not required by law.

72.     The Court therefore concludes that the Named Plaintiffs have settled at a point that is in excess of the range of possible recovery.

### *Complexity, Expense, and Duration of Litigation*

73.     Both parties agree that this case was extensive, expensive, complicated, arduous, and time-consuming.

74.     After the Named Plaintiffs filed their Motion for Class Certification in 1999, the Court stayed the action to allow the parties to focus exclusively on a class settlement. The Court monitored the parties' progress towards settlement through numerous status conferences and hearings.

75.     The parties took several years to arrive at a comprehensive settlement agreement that was painstakingly negotiated through multiple exchange of documents and drafts and attendance at two mediation conferences.

76.     The parties, through their respective experts, also field tested the proposed Consent Decree documents by surveying several stores in Tampa, Florida.

77.     The settlement negotiations were especially complex and multi-faceted because the shopping experience at Publix is comprised of numerous individual interactions for different types of services at different locations within each store.

### *Substance and Amount of Opposition to Settlement*

78.     No valid objections were filed to the proposed Consent Decree.

79.     The objection of Darling Dubois, to the extent that it is not moot, is not a true objection. Objections to a proposed settlement in a class action may be based on the following grounds: timing, procedure, form, amount of settlement, type of relief, and the amount and method of payment of attorneys' fees. *See* 4 NEWBERG ON CLASS ACTIONS § 11:58.

CASE NO. 98-917-CIV-HOEVELER

80.     In her correspondence to the Court, Ms. Dubois merely stated that she objected to the Consent Decree because she had had an unpleasant shopping experience while visiting a Publix store in South Carolina thirteen years ago.  Ms. Dubois, however, did not object to any of the actual terms set forth in the Consent Decree.  Instead, she advised the Court that that the entry doors at the Publix store were not wide enough, the sidewalks did not have curb ramps, and that the bathroom doors and stalls were inaccessible.

81.     The Court's review of the proposed Consent Decree confirms that Ms. Dubois' concerns are addressed by the accessibility enhancements that Publix has agreed to implement in connection with the Consent Decree.  Specifically, Section A of the Exhibit 3 addresses exterior walkways, Section D addresses the entry doors, and Section H addresses the public restrooms within the Publix stores.  Thus, Ms. Dubois' statement that she "objects" to the Consent Decree is not a valid objection and, to the extent necessary, is overruled.  *In re Prudential Secs., Inc.,* 1995 WL 798907, *18 (S.D.N.Y. Nov. 20, 1995)(overruling objections that are merely conclusory and have not factual or legal substantiation); *Sunrise Toyota, Ltd. v. Toyotal Motor Co., Ltd.,* 1973 WL 778, *6 (S.D.N.Y. Mar. 19, 1973)(same).

82.     Pauline Henderson's correspondence, which is undated, but was received by the Court on July 11, 2005, is not an objection, but a mere request for additional information.  In response, Mr. Charouhis, as Class Counsel provided Ms. Henderson with a copy of the Consent Decree and Class Notice.

83.     The filing of Mr. Wood, on his behalf and, purportedly, on behalf of the Florida Paraplegic Association, is overruled as well.

84.     Mr. Wood's filing was 28 days late.  The Court is therefore not required to address or consider his concerns.  *See, e.g., Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D.

33

207, 246 (D. N.J. 2005) (stressing how the notice unambiguously stated that late objections would not be considered); *In re Heritage Bond Litig.,* 2005 WL 1594403, at *10 (C.D. Cal. 2005) (summarily refusing to consider an objection that was filed ten days after the filing deadline); *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 476 (S.D. Fla. 2002)("regardless of the excuses offered, the objections are untimely and will disrupt the fair and adequate settlement, to the parties' substantial prejudice"); *In re Centocor, Secs. Litig.,* 1993 WL 189937, at *7, 1993 U.S. Dist. LEXIS 7229, at *10 n. 5 (E.D. Pa. June 2, 1993) (completely refusing to consider late objections); *Haynes v. Shoney's, Inc.,* 1993 WL 19915, at *2, 1993 U.S. Dist. LEXIS 749, at *6 (N.D. Fla. Jan. 25, 1993) (where objection was filed two days late, the tardiness of the objection was in and of itself "reason enough to reject [it]").

85.     Moreover, even if the filing was timely, it would still be overruled as lacking in merit.   Mr. Wood, on his own behalf and on behalf of the Florida Paraplegic Association, expresses his displeasure with the placement of displays within the Publix stores.

86.     There is no requirement under the ADA or the ADAAG that Publix provide a particular clearing space between dry goods displays, such as warm beer displays, and the refrigerated sections of the aisle.   There is also no requirement under the ADA or the ADAAG that a customer be able to reach a refrigerated display from a particular location within the supermarket aisle.

87.     Warm beer displays cannot be considered barriers to access as they do not prohibit access to or along the retail display aisles.   Moreover, their removal would have an adverse impact on a store's selling space, especially in smaller, Publix pre-ADA stores.   *See Lieber v. Macy's West, Inc.,* 80 F.Supp.2d 1065, 1078 (N.D. Cal. 1999)("the rearrangement of temporary or moveable structures, such as furniture, equipment or display racks is not readily

achievable to the extent that it results in a significant loss of selling or serving space")(quoting 42 U.S. §12182(b)(2)(A)(iv)).

88.     The new construction standards set forth in the ADAAG do not require the removal of the warm beer displays because of reach range concerns.  In this regard, ADAAG Section 4.1.3 – Accessible Buildings: New Construction,  provides as follows:

   …

   (12) Storage, Shelving and Display Units:

   …

   (b)  Shelves or display units allowing self-service by customers in mercantile occupancies shall be located on an accessible route complying with 4.3.  Requirements for accessible reach range do not apply.

89.     Thus, references to ADAAG Section 4.2.4 justifying the proposition that warm beer displays must be removed in order to provide reach range for patrons with disabilities are inapplicable.

90.     Nonetheless, Exhibit 3 to the Consent Decree limits the depth of displays that can be placed on the floor in front of certain other types of displays, such as refrigerated beer coolers. (Exhibit 3, ¶¶(7), I(9).

91.     Accordingly, the Court concludes that the concerns of Mr. Wood and the Florida Paraplegic Association regarding the placement of displays within the stores is improper and invalid as Publix, although not required to do so under the ADA or the ADAAG, has addressed the issue in Exhibit 3 of the Consent Decree.  To the extent that Mr. Wood's and the Florida Paraplegic Association's untimely filing can be characterized as an objection, it is hereby overruled.

CASE NO. 98-917-CIV-HOEVELER

***Stage of Proceeding at Which the Settlement was Achieved***

92.    This case has been pending for over 7 years and the parties were engaged in settlement negotiations for approximately five years.

93.    The parties did not engage in formal discovery because the Court stayed the action in 1999 to allow the parties to exclusively focus on a comprehensive settlement negotiation.

94.    The parties, however, did engage in extensive informal discovery, negotiations, and exchanged numerous drafts of the proposed Consent Decree and exhibits. The parties also attended numerous status conferences and/or hearings to apprise the Court of the progress of the settlement negotiations.

95.    The two mediation conferences, particularly the second mediation conference that took place over two-days before the Honorable Magistrate William C. Turnoff negate any inference of collusion or fraud by the parties.

96.    The Court's ongoing monitoring of the parties' progress with respect to the settlement negotiations and the parties' presence at the numerous hearings and conferences lead the Court to conclude that the parties' respective counsel zealously and properly advocated the interests of their respective clients in order to reach a comprehensive settlement agreement that is in the best interests of both the settlement class and Publix.

97.    In light of the strong public interest in favor of class action settlements, *Cotton*, 559 F.2d at 1331, and after through examination of the *Bennett* factors, the Court concludes that the proposed Consent Decree is fair, adequate, and reasonable, and, thus, due to be finally approved.

Dated: This 21st day of July, 2005.

36

CASE NO. 98-917-CIV-HOEVELER

**LAW OFFICES OF WILLIAM N.**
**CHAROUHIS & ASSOCIATES, LLC**
Class Counsel
201 S. Biscayne Boulevard
28th Floor
Miami, Florida 33131
Phone: (305) 913-7523
Fax: (305) 913-6452

By: _____
    William N. Charouhis, Esq. (w/permission)
    Florida Bar No.510076

and

**KIRKPATRICK & LOCKHART**
**NICHOLSON GRAHAM, LLP**
Attorneys for Defendant
201 South Biscayne Blvd., 20th Floor
Miami, Florida 33131
Phone: (305) 539-3300
Fax: (305) 358-7095

By: _____
    Carol C. Lumpkin, Esq.
    Florida Bar No.797448
    Judd J. Goldberg, Esq.
    Florida Bar No. 0115924

and

Stanley H. Wakshlag, Esq.
**AKERMAN SENTERFITT & EIDSON, P.A.**
Suntrust International Center
One Southeast Third Avenue
Miami, FL 33131-1714
Telephone: (305) 374-5600
Facsimile:  (305) 374-5095

37

CASE NO. 98-917-CIV-HOEVELER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Hand Delivery upon: Stanley H. Wakshlag, Esq., Akerman Senterfitt, SunTrust International Center 28th Floor, One SE Third Avenue, Miami, Florida 33131-1704; Todd W. Shulby, Esq., 12555 Orange Drive, Suite 270, Davie, Florida 33330-4304; William N. Charouhis, Esq., 201 S. Biscayne Boulevard, 28th Floor, Miami, Florida 33131, on this 21st day of July, 2005.

Judd J. Goldberg