**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 98-CV-00917-SCOLA/GOODMAN**

ASSOCIATION FOR DISABLED
AMERICANS, INC., et al.,

       Plaintiffs,

v.

PUBLIX SUPER MARKETS, INC.,

       Defendant.

_____/

*OMNIBUS* REPORT AND RECOMMENDATIONS
ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS'
<u>MOTIONS FOR EXTENSION OF TIME AND FOR ATTORNEY'S FEES</u>

"A goal without a deadline is just a dream."

> -   Robert Herjavec (Croatian-Canadian businessman and investor)

"Respect your deadline like it's a field marshal."

> -   Neeraj Agnihotri, Procrasdemon - *The Artist's Guide to Liberation from Procrastination*

In this Americans with Disabilities Act ("ADA") class action, Plaintiffs seek to "extend" (or more accurately, "revive") the court-approved Consent Decree in order to allow Class Counsel to recover additional fees for work performed after the Court's final approval of the Consent Decree. [ECF Nos. 258–59]. Publix Super Markets, Inc. ("Publix" or "Defendant") opposes the relief requested and has filed its own motion seeking the

dismissal of this action with prejudice under Federal Rule of Civil Procedure 41(b) and pursuant to § 22.3.b of the Consent Decree. [ECF Nos. 255-1; 268].

United States District Judge Robert N. Scola, Jr. referred the motions to the Undersigned "for either an order or a report and recommendations, consistent with 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of the Local Magistrate Judge Rules." [ECF Nos. 260; 269].

For the reasons stated herein, the Undersigned **respectfully recommends** that the District Court **grant** Defendant's motion, **dismiss this action with prejudice**, and **deny as moot** Plaintiffs' motions.

I.      **Background**

        A.      **The Class Action Lawsuit and Class Settlement**

In 1998, Plaintiffs brought a putative class action lawsuit against Publix seeking injunctive relief for alleged violations of Title III of the ADA, 42 U.S.C. §§ 12181, *et seq.*, at various Publix stores located in the Southeastern United States. [ECF No. 1]. Plaintiffs later amended their complaint to add additional stores. [ECF No. 19]. They also filed a motion seeking class action certification pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2). [ECF No. 25]. The parties ultimately entered into a consent decree [ECF No. 255-1] and on March 4, 2005, filed a joint motion seeking the Court's preliminary approval. [ECF No. 123].

On March 8, 2005, the Court issued an Order granting preliminary approval of the proposed consent decree, conditionally certifying the settlement class, directing notice to the class, and scheduling a fairness hearing on the final approval of the proposed consent decree. [ECF No. 126]. On July 29, 2005, the Court approved the parties' joint stipulation to amend the settlement class definition in the proposed consent decree [ECF No. 148] and entered the Final Order Certifying the Settlement Class, as Amended, Approving the Consent Decree, and Closing Case [ECF No. 149].

### B.      Consent Decree

The court-approved Consent Decree states, in relevant part:

### 7.      TERM OF CONSENT DECREE

7.1 **Except as otherwise set forth in this Decree**, the term of this Decree is 6 years from the date of Final Approval. **This Decree will *automatically* expire by its own terms 6 years from the date of Final Approval**.

***

### 20.      DISPUTE RESOLUTION

20.1    Any dispute between the Plaintiffs or Class Counsel and PUBLIX regarding this Decree or its implementation will be addressed as follows:

20.1.a. **Notice**. If Class Counsel OR PUBLIX has reason to believe that a dispute exists, prompt written notice will be provided to the other Party.

20.1.b. **Confer - Technical Dispute**. If the dispute arises out of or is related to Exhibit 3,

Exhibit 3A, Exhibit 4, the Survey Form, the Survey Completion Form and/or the Inspection Report Form (hereinafter, a "Technical Dispute"), within 30 days after receipt of the notice, Plaintiffs' Expert and Defendant's Expert will confer by telephone or in person and attempt to resolve the dispute. If Plaintiffs['] Expert and Defendant's Expert are able to propose a mutually-agreed proposed resolution [to] the dispute, they will forward their proposal to Class Counsel and counsel for PUBLIX for their approval. If, at the expiration of the 30 day period, Plaintiffs['] Expert and Defendant's Expert are not able to reach a resolution, they shall so notify Class Counsel and PUBLIX. If Class Counsel and counsel for PUBLIX do not accept the experts' proposal or if a proposal was not able to be provided by the experts, Class Counsel and counsel for Publix shall then have another 30 days to attempt to resolve the dispute.

20.1.c. **Confer-Non-Technical Disputes**. If the dispute is not a Technical Dispute, as defined in Section 20.1.b above, **within 30 days after receipt of the notice, Class Counsel and counsel by PUBLIX will confer by telephone or in person and attempt to resolve the dispute.**

20.1.d. **Mediation**. **If the conferment process does not resolve the dispute, the matter may be referred by either Class Counsel or PUBLIX to mediation before a neutral third party mutually agreed to by Class Counsel and PUBLIX**. The Parties agree to make best efforts to conduct the mediation within 60 days of the notice provided by Section 20.1.a.

4

20.1.d. [sic] **Magistrate**. **If mediation does not occur or does not resolve the dispute or if the mediation does not occur within 60 days as set forth in Section 20.1.c. [sic], the matter may be submitted by either Class Counsel or PUBLIX to the United States Magistrate Judge** in the U.S. District Court for the Southern District of Florida who is presiding in this matter.

## 21. REASONABLE ATTORNEYS' AND EXPERT'S FEES, LITIGATION EXPENSES AND COSTS

*** 

**21.2 Fees for Dispute Resolution and Work Performed After Final Approval.**

21.2.a **Class Counsel and Plaintiffs' Expert will be entitled to reasonable attorneys' fees, litigation expenses and costs (including expert fees, expenses, and costs) incurred in all aspects of the dispute resolution process set forth in Section 20 of this Decree and for all reasonable work performed in carrying out their respective obligations under this Decree after Final Approval**, provided (i) Class Counsel is the prevailing party as determined by counsel for the Parties, the mediator, or the U.S. District Court; and (ii) provided the cap set forth in Section 21.2.b has not been exceeded. Payment for the services of any third[-]party mediator used under Section 20.1.c will be determined by Class Counsel and PUBLIX or in accordance with the dispute resolution procedure.

21.2.b For the sole purpose of settling this matter and avoiding the further cost of litigation, **PUBLIX will pay reasonable attorneys' fees, litigation expenses (including**

5

**Plaintiff's [sic] Expert's fees and costs) and costs incurred by Class Counsel after Final Approval of this Decree for reasonable work performed by Class Counsel and Plaintiffs' Expert in carrying out their obligations under this Consent Decree (hereinafter, the "Post-Final Approval Settlement Sum")**. The Post-Final Approval Settlement Sum shall in no event exceed One Hundred Thousand Dollars ($100,000.00) over the term of this Consent Decree plus the cost of the inspections described in Section 18.4 of this Decree.

21.2. b.1 **On the first anniversary of Final Approval of this Consent Decree and on each subsequent anniversary thereafter, Class Counsel and Plaintiffs' Expert will each submit to PUBLIX a statement of reasonable attorneys' fees and costs and reasonable expert fees and costs incurred during the previous 12 months**, including a statement of the work performed, the amount of time expended, the persons and hourly rate for each person performing the work, and a description of particular costs and expenses.

21.2.b.2 **Within 30 days after receiving the statement, PUBLIX will inform Class Counsel or Plaintiffs' Expert, in writing, as to any portion of the statement(s) that it contends is not payable under this Decree and any reason for the contention. Disputes regarding fees under this Section**

**will be resolved under the Dispute Resolution Provisions of Section 20 of this Decree**.

21.2.b.3 Provided the $100,000.00 cap in Section 21.2.b of this Decree has not been exceeded, **PUBLIX will pay the undisputed amounts within 30 days after receiving the statements from Class Counsel and Plaintiffs' Expert**. PUBLIX will issue two checks, one to Class Counsel and one to Plaintiffs' Expert for the work performed after Final Approval of this Consent Decree.

21.2.b.4 The payments set forth in Section 18.4 are not subject to the $100,000.00 cap set forth in Section 21.2.b of this Consent Decree.

21.2.b.5 PUBLIX and Class Counsel agree that Publix is paying Class Counsel and Plaintiffs' Expert the Post-Final Approval Settlement Sum for the sole purpose of settling this matter and avoiding further litigation expenses.

\*\*\*

22.3     **Judgment, Final Approval, Dismissal.**

\*\*\*

**22.3.b This action *will* be dismissed with prejudice, under [the] Federal Rules of Civil**

**Procedure, Rule 41, within 30 days after expiration of the Term of this Decree**.

\*\*\*

24.2   **Modifications**. No modification of this Decree will be effective unless it is ordered by the Court.

**27. EXTENSION OF TIME**. **The Parties may jointly agree and subject to approval of the Court where required, to reasonable extensions of time to carry out the provisions of this Decree**. Nothing in this paragraph shall be construed to require any Party to grant a requested extension.

**28. RETENTION OF JURISDICTION. The Court will retain continuing and exclusive jurisdiction over the Parties for the purpose of enforcing, implementing, and interpreting this Decree**, including jurisdiction over members of the Settlement Class, and over the administration and enforcement of the Decree, and **for determining and awarding attorneys' and expert's fees**, litigation expenses and costs.

[ECF No. 255-1, pp. 7, 18–19, 21–22; 26–27 (emphasis added)].[1]

Based on the parties' earlier *joint* requests, the Court extended the Consent Decree four times, including most recently on March 11, 2021 [ECF No. 256], when it "[was] extended until September 30, 2022 to allow the parties to continue to work toward fulfilling the provisions of the Consent Decree." [ECF No. 255 (emphasis omitted)].

C.   **The Instant Motions**

On October 1, 2022, the day *after* the Consent Decree's September 30, 2022

---

[1]   The Undersigned cites to the pagination automatically generated by the Court's CM/ECF database, which appears in the headers of all court filings.

expiration date, Plaintiffs filed a verified application for an award of $33,762.50[2] in attorney's fees [ECF No. 258] and a motion for a 90-day extension of time for the parties to comply with the Consent Decree. [ECF No. 259]. Defendant opposes both motions [ECF Nos. 261–62] and filed a motion seeking (among other things) to dismiss this action with prejudice [ECF No. 268].

The motion for extension of time asks the Court to extend the Consent Decree for 90 days so that the parties can resolve "Class Counsel's final application for attorneys' fees in accordance with the dispute resolution procedures of the Consent Decree." [ECF No. 259]. Plaintiffs argue that because Class Counsel submitted their invoice (No. 10104) to Publix's counsel on August 24, 2022, additional time is needed for the parties to engage in the dispute resolution framework set forth in the Consent Decree, which includes the following provision:

> Within 30 days after receiving the statement, PUBLIX will inform Class Counsel or Plaintiffs' Expert, in writing, as to any portion of the statement(s) that it contends is not payable under this Decree and any reason for the contention. **Disputes regarding fees under this Section will be resolved under the Dispute Resolution Provisions of Section 20 of this Decree**.

[ECF No. 255-1, p. 21 (§ 21.2.b.2)].

As will be discussed in more detail below, the Court does not have jurisdiction to

---

[2]    In addition to this initial $33,762.50 fee request, Plaintiffs have requested additional attorney's fees in subsequent filings. *See* [ECF Nos. 267-3 ($36,812.50); 272-3 ($16,197.50)]. In total, Plaintiffs now seek to recover $86,772.50 ($33,762.50 plus $36,812.50 plus $16,197.50) in supplemental attorney's fees.

entertain Plaintiffs' motions. In other words, because the Consent Decree expired on September 30, 2022 and Plaintiffs did not move to extend the Consent Decree until the following day (October 1, 2022), the Court no longer has jurisdiction to "extend" (or more accurately, *revive*) the already-expired Consent Decree and consider Plaintiffs' fees motion. Accordingly, Defendant's motion -- seeking the with-prejudice dismissal of this lawsuit -- should be **granted** and Plaintiffs' belated fees motion and motion for extension of time should be denied as **moot**.

## II.   Applicable Legal Standards

"[C]onsent decrees are entered by the court and are judicially enforceable[.]" *Rowe v. Jones*, 483 F.3d 791, 797 (11th Cir. 2007). "Consent decrees are a hybrid in the sense that they are at once both contracts and orders, they are construed largely as contracts, but are enforced as orders." *Berger v. Heckler*, 771 F.2d 1556, 1567–68 (2d Cir. 1985) (internal citations omitted). "For enforcement purposes, consent agreements are interpreted under the principles of contract law." *Jacksonville Branch, N.A.A.C.P. v. Duval Cnty. Sch. Bd.*, 978 F.2d 1574, 1578 (11th Cir. 1992). "For the purposes of modification, consent decrees are not governed by contract law, but are treated as judicial acts, akin to injunctions." *Id.*

"In cases governed by federal law, . . . consent decrees are interpreted according to principles of contract law." *Pottinger v. City of Miami*, 805 F.3d 1293, 1298 (11th Cir. 2015) (citations and internal quotation marks omitted); *see also Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008) ("We interpret a consent decree as we would a

contract, applying principles of Florida's general contract law."). As with any contract, the language of the consent decree controls its interpretation.

Where "the terms of a voluntary contract are clear and unambiguous, . . . the contracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties." *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 52 (Fla. 1st Dist. 2005) (quoting *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995)).

Contracts must be interpreted in accordance with the plain meaning of the language used in order to give effect to the contract as it was written. *Peery v. City of Miami*, 977 F.3d 1061, 1069 (11th Cir. 2020) ("In Florida, 'the plain meaning of the language used by the parties controls as the best indication of the parties' agreement,' so contract terms 'should be interpreted in accordance with their plain and ordinary meaning.'" (quoting In re Std. Jury Instructions—Contract & Bus. Cases, 116 So. 3d 284, 315 (Fla. 2013)). "Furthermore, '[i]n construing a contract, the legal effect of its provisions should be determined from the words of the *entire contract*,' and that construction must give 'effect to *all* of the provisions of the contract.'" *Summitbridge Credit Invs. III, LLC v. Carlyle Beach, LLC*, 218 So. 3d 486, 489 (Fla. 4th DCA 2017) (alteration in original) (quoting *Sugar Cane Growers Co-op. of Fla., Inc. v. Pinnock*, 735 So. 2d 530, 535 (Fla. 4th DCA 1999)).

### III.    Analysis[3]

The Undersigned will address Publix's motion to dismiss first because, if granted, then it would render moot Plaintiffs' motions.

### A.    Publix's Motion to Dismiss [ECF No. 268]

Publix asserts that "this matter should be dismissed with prejudice" under "the clear terms of the [p]arties' Consent Decree[.]" [ECF No. 268, p. 2].[4] Publix argues that "[t]he Consent Decree **'automatically expire[d] by its own terms' on** the date certain mutually agreed upon by the Parties, which was **September 30, 2022**." *Id.* at 3 (quoting Consent Decree at § 7.1 (alteration in Motion; footnote omitted; emphasis added)). Moreover, the Consent Decree "state[s] that: '[t]his action **will be dismissed with prejudice**, under [the] Federal Rules of Civil Procedure, Rule 41, **within 30 days after**

---

[3]    The Undersigned notes that the parties have raised some arguments in the footnotes of their filings. While the Undersigned has considered these arguments -- to the extent that they are relevant to this Report and Recommendations -- the parties are reminded that it is improper to raise an argument solely in a footnote. *See Sony Music Ent. v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858, at *13 (S.D. Fla. Sept. 14, 2022) ("[A]ddressing legal arguments in footnotes is an incorrect method to present substantive arguments on the merits or otherwise request relief from the Court.").

[4]    Publix's motion also seeks to strike as "procedurally and substantively defective" certain arguments raised by Plaintiffs for the first time in their reply to the fees motion. [ECF No. 267] and an exhibit (Exhibit 3) seeking additional fees [ECF No. 268, p. 2]. Because the Consent Decree expired on September 30, 2022 (and the case should be dismissed with prejudice), it is not necessary to address (for the most part) Plaintiffs' assertion of new arguments in their reply brief and Class Counsel's compliance (or non-compliance) with the Local Rules. Nor is it necessary for the Court to address Publix's request that certain portions of Plaintiffs' reply in support of their fees motion be stricken.

**expiration of the Term of this Decree**.'" *Id.* (quoting Consent Decree at § 22.3.b (emphasis in Motion)). Thus, Publix reasons that "by the plain terms of the Consent Decree, which was made a final judgment by the Honorable Judge Hoevler [sic] in 2005, the Court must dismiss the action with prejudice no later than thirty (30) days after the terms of the Consent Decree expire." *Id.*

Publix further asserts that "a district court 'does not have inherent authority to enforce an order that has expired,' and a court has no authority to retain jurisdiction over a duly entered consent decree if the parties do not move to modify or extend the Consent Decree **prior to its expiration**." *Id.* at 3 (quoting *E.E.O.C. v. Loc. 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Joint Apprenticeship Comm., Iron Workers Locs. 40 & 361 & Allied Bldg. Metal Indus.*, 76 F.3d 76, 80 (2d Cir. 1996) (emphasis added)).

Plaintiffs dispute Publix's contention that the Consent Decree has expired. [ECF No. 272, p. 1]. In making this argument, Plaintiffs accuse Defendant of ignoring several provisions of the Consent Decree:

> First, although ignored by Defendant, the termination provision in section 7.1 this [sic] Consent Decree provides:
>
> > *Except as otherwise set forth in this Decree, the term of this Decree is 6 years form [sic] the date of Final Approval. This Decree will automatically expire by its own terms 6 years from the date of Final Approval. [Emphasis added.]*
>
> Publix ignores the first sentence. Publix does admit, however, that there have been four prior extensions of the Consent Decree, extending the Consent Decree by years (the most recent through September 30, 2022) so its terms could be properly implemented[.]

13

Publix also ignores section 22.3.b of the Consent Decree, which provides:

> *This action will be dismissed with prejudice, under [the] Federal Rules of Civil Procedure, Rule 41, within 30 days after expiration of the Term of this Decree.*

So, the case remains active and will not be dismissed (must be by motion) until 30 days from September 30, 2022.

Publix also ignores Paragraph 28 of the Consent Decree, which states:

> *Retention of Jurisdiction.* <u>*The Court will retain continuing and exclusive jurisdiction over the Parties for the purpose of enforcing, implementing, and interpreting this Decree*</u>*, including jurisdiction over members of the Settlement Class, and over the* <u>*administration and enforcement*</u> *of the Decree,* <u>*and for determining and awarding attorneys' and expert's fees, litigation expenses and costs*</u>.

The Court's retention of jurisdiction was intentionally broad.

*Id.* at 7 (footnote omitted; emphasis in Response).

Plaintiffs therefore argue that:

> it is clear by the "<u>[e]xcept as otherwise set forth in this Decree</u>" provision in section 7 .1 of the Consent Decree, that under Paragraph 28 of the Decree, the Court has express continuing jurisdiction, and inherent authority, to enforce and modify as appropriate its order, the Consent Decree, including extending the term thereof as necessary and appropriate for the terms thereof to be completed.

*Id.* at 7-8 (emphasis in Response).

But the Court's authority to extend (***before the expiration date***) the Consent Decree

is not at issue here. It is undisputed that the Court had the authority to (and did) extend

the Consent Decree four times before the Consent Decree expired. *See* [ECF Nos. 231; 246;

252; 256]. What is different now is that the Consent Decree *lapsed* (on September 30, 2022) *before* Plaintiffs filed their motion for extension of time (and their fees motion).

The Undersigned disagrees with Plaintiffs' assertion that "the Consent Decree in the case at bar does have a continuing jurisdiction clause." [ECF No. 272, p. 6]. The Undersigned does not read section 28 (Retention of Jurisdiction) as containing language extending the Court's jurisdiction **in perpetuity**.

To the extent that Plaintiffs rely on the Consent Decree's retention of jurisdiction clause, that provision does not render the Consent Decree's clear expiration date ambiguous or otherwise extend the District Court's jurisdiction in perpetuity. The retention of jurisdiction provision states:

> **28. RETENTION OF JURISDICTION**. The Court will retain **continuing** and exclusive jurisdiction over the Parties **for the purpose of enforcing, implementing, and interpreting this Decree**, including jurisdiction over members of the Settlement Class, and over the administration and enforcement of the Decree, **and for determining and awarding attorneys' and expert's fees, litigation expenses and costs**.

[ECF No. 255-1, pp. 26–27 (emphasis added)].

The Undersigned does not read the word "continuing" in § 28 to mean that the Court retains jurisdiction in perpetuity, but, rather that the Court's jurisdiction would continue even after Judge Hoeveler's entry of the final order [ECF No. 149] certifying the settlement class and approving the Consent Decree. In other words, this provision does not extend the Court's jurisdiction over the parties and over the Consent Decree **in perpetuity or beyond the clearly articulated September 30, 2022 expiration date (or any**

**other extension of the expiration date if timely extended).**

Importantly, § 7.1 (Term of Consent Decree) contains a definite, *automatic* expiration date. Section 7.1 of the Consent Decree provides that "**[e]xcept as otherwise set forth in this Decree**, the term of this Decree is 6 years from the date of Final Approval. This Decree **will automatically expire by its own terms** 6 years from the date of Final Approval." [ECF No. 255-1, p. 7 (emphasis added)]. Section 28 (the retention of jurisdiction provision) does not contain any specific, temporal expansion of the Court's jurisdiction over the Consent Decree or include any language providing for the perpetual enforcement of the Consent Decree. Therefore, § 28 does not "otherwise set forth" a different expiration date over the Court's jurisdiction.

The principles of contract construction under Florida law provide that "'[t]he legal effect of [a contract's] provisions should be determined from the words of the entire contract,' and that construction must give 'effect to all of the provisions of the contract.'" *Summitbridge Credit Invs. III, LLC*, 218 So. 3d at 489 (quoting *Sugar Cane Growers Co-op. of Fla., Inc.*, 735 So. 2d at 535); *Entourage Custom Jets, LLC v. Air One MRO, LLC*, No. 18-22061, 2019 WL 1300948, at *4 (S.D. Fla. Feb. 27, 2019) ("[A] contract should not to be read [sic] so as to make one section superfluous; therefore, all the provisions of a contract must be construed so as to give effect to each." (citing *Universal Prop. & Cas. Ins. Co. v. Johnson*, 114 So. 3d 1031, 1036 (Fla. 1st DCA 2013))).

Nor can Plaintiffs rely on § 22.3 (Judgment, Final Approval, Dismissal) of the

16

Consent Decree to extend the Consent Decree's expiration date (and thereby extend the Court's jurisdiction). Section 22.3.b provides that "[t]his action will be dismissed **with prejudice**, under [the] Federal Rules of Civil Procedure, Rule 41, **within 30 days after expiration of the Term of this Decree**." [ECF No. 255-1, p. 22 (emphasis added)]. Rule 41 merely provides for the voluntary (under subsection (a)) or involuntary (under subsection (b)) dismissal of an action. The purpose of section 22.3.b was to ensure that either the parties or the Court followed through and dismissed the action with prejudice in a timely manner (30 days) *after* the Consent Decree expired. Section 22.3.b does not render the Consent Decree's explicit termination date ambiguous, nor does it extend that termination date by 30 days.

Plaintiffs state that one of the cases cited by Publix (*E.E.O.C.*, 76 F.3d at 80) is distinguishable from the instant case "because in that case the plaintiffs [waited] [ten] years after the consent decree expired before trying to enforce it." [ECF No. 272, p. 7 n.2]. But Plaintiffs do not cite any legal authority which holds that so long as a party files its motion to extend a consent decree only one day after it expires, the Court can revive an already-expired consent decree (notwithstanding that consent decree's automatic termination date).[5]

---

[5]     Failure to assert legal authority for a legal position waives the argument or justifies a Court in rejecting the argument. *See Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him.");

An expired consent decree is just that -- an expired consent decree. It does not matter if a party is seeking to revive the consent decree one day after expiration or 100 days after expiration. In other contexts, courts have held that pleadings filed even one day late are untimely. *See*, *e.g.*, *Bennett v. Ammons*, No. 4:08-CV-134 (CDL), 2009 WL 650428, at *3 (M.D. Ga. Mar. 9, 2009) (in the context of a 28 U.S.C. § 2244(d) petition, stating that "[a] filing deadline cannot be complied with, substantially or otherwise, by filing even one day late"); *Starks v. Metro. Transp. Auth.*, No. 1:20-CV-09569 (MKV), 2022 WL 814668, at *3 (S.D.N.Y. Mar. 17, 2022) ("Title VII claim is time barred if the claim is filed even one day late.").

As the Supreme Court noted in a case involving a one-day missed filing deadline under the Federal Land Policy and Management Act:

> The notion that a filing deadline can be complied with by filing sometime after the deadline falls due is, to say the least, a surprising notion, and it is a notion without limiting principle. **If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline; yet regardless of where the cutoff line is set, some individuals will always fall just on the other side of it.** Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced. "Any less rigid standard would risk encouraging a lax attitude toward filing dates," *United States v. Boyle*, 469 U.S., at 249, 105 S. Ct., at 692. **A filing deadline cannot be**

---

*Belony v. Amtrust Bank*, No. 09-82335-CIV, 2011 WL 2297669, at *2 (S.D. Fla. June 8, 2011) (finding that a defendant's "failure to cite [ ] authority . . . [made] it difficult for the Court to rule in [the defendant's] favor" and that the "deficient memorandum of law [was] itself a basis to deny [the] motion").

> **complied with, substantially or otherwise, by filing late—even by one day.**

*United States v. Locke*, 471 U.S. 84, 100–01, 105 S. Ct. 1785, 1796, 85 L. Ed. 2d 64 (1985) (emphasis added).

The Consent Decree was set to expire on September 30, 2022. Plaintiffs waited until the day *after* the Consent Decree expired to file their motion for extension of time and fees motion. To be sure, Plaintiffs' fee motion was filed at 1:04 AM and their motion for extension of time was filed at 4:43 AM on October 1, 2023. Thus, Plaintiffs did not wait a full day, but merely a matter of hours to seek to extend the Consent Decree. But that does not change the outcome.

The Court has no jurisdiction to extend (or revive) a consent decree that has already expired. While this may *seem* like a harsh result at first blush, Plaintiffs knew of the Consent Decree's expiration date since March 11, 2021 (when the District Court issued its most recent Order extending the Consent Decree "until **September 30, 2022** to allow the parties to continue to work toward fulfilling the provisions of the Consent Decree" [ECF No. 256 (emphasis in original)]) and waited until the early hours of October 1, 2023 to move for an extension of time.

Moreover, to the extent that Plaintiffs argue that the Consent Decree cannot expire on its own terms absent a court order (and a judicial finding that Defendant has complied with *all* terms of the Consent Decree), that argument is not well taken because it ignores section 7.1's language, which provides for the *automatic* expiration of the Consent Decree:

"7.1 Except as otherwise set forth in this Decree, the term of this Decree is 6 years from the date of Final Approval. **This Decree will automatically expire by its own terms** 6 years from the date of Final Approval." [ECF No. 255-1, p. 7 (emphasis added)].

Federal Rule of Civil Procedure 60 permits a litigant to petition the Court to modify or terminate a consent decree. *See Sec. & Exch. Comm'n v. Gity*, No. 20-14342-CIV, 2021 WL 7543025, at *2 (S.D. Fla. Sept. 3, 2021), reconsideration denied, No. 20-14342-CIV, 2021 WL 7542994 (S.D. Fla. Sept. 23, 2021) ("Rule 60(b) governs motions for relief from final judgments, including consent decrees."). But that is not what Defendant is seeking to do here.

Defendant's motion does not seek to *modify* the terms of the Consent Decree. Nor is Defendant asking the Court for an *early* termination of the Consent Decree. Rather, Defendant's motion is simply asking the Court to **follow** § 22.3.b of the Consent Decree, which provides that: "**This action will be dismissed with prejudice, under Federal Rules of Civil Procedure, Rule 41, within 30 days after expiration of the Term of this Decree.**" [ECF No. 255-1, p. 22 (emphasis added)].

According to Plaintiffs:

It was the intent of the parties that upon Defendant's compliance with all of the Consent Decree requirements, which the parties assumed would be completed 'within 30 days after expiration of the Term of this Decree', the parties would then <u>jointly</u> move for the matter to be dismissed with prejudice. However, Defendant has failed to comply with all of the Consent Decree requirements. As such, Class Counsel cannot in good faith consent to the voluntary dismissal of the action under Rule 41(a)(A)(ii) [sic].

*Id.* at 3 (quoting Consent Decree at § 22.3.b (emphasis in Response)).

In a later portion of their response, Plaintiffs argue that "Defendant has not even moved for termination [of the Consent Decree] under Rule 60, let alone provided evidence that it has complied with the Consent Decree in all respects." *Id.* at 5. Plaintiffs thus argue that "the Consent Decree should not yet be terminated, nor should the case be dismissed." *Id.* at 5.

Publix states in its reply that its motion seeking dismissal does not:

> require[ ] a reliance on Rule 60 to amend a judgment as Class Counsel seems to argue—**it is simply applying the plain terms of the existing final judgment in this case (i.e., the Consent Decree)**. Plaintiffs relied on Rule 60 in attempting to modify the Consent Decree without Publix' approval, and Publix cited a provision in Rule 60 that allows termination in its Opposition, but that was before this 30-day period had run. They are two completely different standards, **and Rule 60 has nothing to do with Publix's relief sought in the Motion to Dismiss/Strike**. Plaintiffs' arguments about Rule 60 are a red herring.

[ECF No. 273, p. 3 n.2 (emphasis added)]. Publix states, without citation that while "Plaintiff [sic] attempts to engraft Rule 60 Requirements onto this portion of the Consent Decree, [ ] Courts are only required to engage in such analysis where the Consent Decree does not have plain termination language as it does in this case." *Id.* at 4 n.3.

Instead of invoking Rule 60, Publix says it is "moving for involuntary dismissal under Rule 41(b) because Plaintiffs refuse to comply with the Consent Decree—a Court order—which requires them to dismiss the case with prejudice now that the terms have expired." *Id.* at 3.

The Undersigned agrees with Publix that the Court does not need to resort to Rule 60 in order to dismiss this action with prejudice pursuant to the language of the Consent Decree. Publix is not seeking a modification of the Consent Decree. Rather, it is asking the Court to acknowledge the plain language of § 22.3.b of the Consent Decree, which provides that "[t]his action will be dismissed with prejudice, under [the] Federal Rules of Civil Procedure, Rule 41, within 30 days after expiration of the Term of this Decree." [ECF No. 255-1, p. 22].

Here, the Consent Decree voluntarily agreed to by the parties provides for the automatic termination of the consent decree: "7.1 Except as otherwise set forth in this Decree, the term of this Decree is 6 years from the date of Final Approval. **This Decree will automatically expire by its own terms** 6 years from the date of Final Approval." *Id.* at 7 (emphasis added).[6]

Thus, Defendant does not need to move the Court to terminate the Consent Decree under Rule 60 or otherwise because the Consent Decree already included its own automatic termination provision. *See, e.g., Hallett v. Morgan*, 296 F.3d 732, 741 (9th Cir. 2002) ("To the extent that [the] [p]laintiffs did not timely move for an extension of the medical services provisions, those parts of the [j]udgment expired by their own terms. The district court did not need to rule on [the] [d]efendants' motion to terminate these

---

[6]     Although the Consent Decree contained a six-year expiration deadline, the Court extended the Consent Decree (at the parties' joint request) four times, most recently until September 30, 2022. [ECF No. 256].

already expired provisions."); *Corey H. v. Chicago Bd. of Educ.*, 528 F. App'x 666, 668 (7th Cir. 2013) ("The consent decree at issue here expired on September 1, 2012; thus, there is no longer a consent decree for us to vacate.").

Plaintiffs state that "Defendant has failed to comply with all of the Consent Decree requirements" [ECF No. 272, p. 3] but do not cite to any specific paragraphs of the Consent Decree which Publix has failed to comply with, other than the non-payment of Class Counsel's most-recent invoices (No. 10104, Exhibit 3 [ECF No. 267-3], Exhibit 3 [ECF No. 272-3]). Moreover, Plaintiffs should have raised these arguments *before* the Consent Decree expired.

In *J.G. v. Bd. of Educ. of Rochester City Sch. Dist.*, the district court rejected a similar argument as untimely:

> [The] [p]laintiffs' contention that the [defendant] [was] not in compliance with the dictates of [a] 1997 Decree [was] **an argument that should have been made to the [c]ourt during the time the [d]ecree was in force**. To enforce a decree against any party after the decree has expired violates the unambiguous language of the decree as well as the intent of the parties, who negotiated the termination date in good faith.

193 F. Supp. 2d 693, 701 (W.D.N.Y. 2002) (emphasis added).

Judge Scola's most-recent Order extending the Consent Decree provided that "the Consent De[c]ree is extended until **September 30, 2022** to allow the parties to continue to work toward fulfilling the provisions of the Consent Decree." [ECF No. 256 (emphasis in original)]. If Plaintiffs believed there remained outstanding provisions of the Consent Decree which Publix had not complied with (such as unpaid attorney's fees or other

supposed failures to comply), then it was incumbent upon Plaintiffs to seek to extend the Consent Decree *before* the Consent Decree's September 30, 2022 expiration date.

Class counsel had ample opportunity to *timely* move for an extension of the Consent Decree. Plaintiffs are familiar with § 27 of the Consent Decree (the mechanism for extending the Consent Decree), having employed that mechanism in four earlier joint motions for extensions of time.

If, as the September 30, 2022 expiration date drew near, there were still unresolved matters (including attorney's fees), then Class Counsel should have identified these perceived problems, drafted a motion to enforce or extend the Consent Decree, and filed that motion *before* the September 30, 2022 deadline passed. Plaintiffs did not file a timely motion for extension of time. Therefore, the Consent Decree expired on its own terms on September 30, 2022 and the Court should enter an Order dismissing this action with prejudice.

In *J.G.*, the district court found that:

> [b]ecause the 1997 Consent Decree expired by its own terms on May 1, 2000, **and because there was no request for an extension of the decree by any party prior to its expiration**, . . . **the Decree [was] terminated under its own terms, that the case [was] now closed**, and . . . [the] [c]ourt no longer ha[d] jurisdiction to here [sic] any claims arising out of the [c]omplaint or the consent decrees.

193 F. Supp. 2d at 701 (emphasis added). The same result is compelled here.

Plaintiffs note that *J.G.* is a non-binding decision and attempt to distinguish *J.G.* on multiple grounds. [ECF No. 272, p. 5]. They state that:

> **Unlike the case at bar, the consent decree in J.G. expressly stated that the court only retained jurisdiction through a certain date**, after which the consent decree terminated. As the *J.G[.]* court noted: "One notable and significant aspect of the . . . Decree was that it provided a termination date after which the Court would no longer retain jurisdiction over the matter[.]" [193 F. Supp. 2d at 697]. That is the opposite of what we have here.

*Id.* (emphasis added).

But Plaintiffs ignore the language of the Consent Decree, which clearly and unambiguously included an explicit expiration date: "7.1 Except as otherwise set forth in this Decree, the term of this Decree is 6 years from the date of Final Approval. This Decree will automatically expire by its own terms 6 years from the date of Final Approval." [ECF No. 255-1, p. 7]. The parties moved to extend that expiration date four times and Judge Scola's most-recent order on this topic expressly stated: "the Consent De[c]ree is extended until **September 30, 2022** to allow the parties to continue to work toward fulfilling the provisions of the Consent Decree." [ECF No. 256 (emphasis in original)].

"A consent decree is essentially a settlement agreement subject to continued judicial policing." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). Here, the parties bargained for a consent decree with an automatic, specified termination date (September 30, 2022). In other words, the parties bargained to end judicial policing of the Consent Decree on a date certain. The Court should therefore hold the parties to that bargained-for, clearly-defined end date.

Plaintiffs seem to suggest that before the Court can dismiss this action, it must make an evidentiary finding that Defendants complied with *all* of the terms of the

Consent Decree. They note that:

> in *J.G.*, <u>eight months</u> after the "termination" date, the court entered an order to show cause why a formal order terminating the consent decree and ending the case should not be entered. A hearing was held on that motion at which the plaintiff argued that the court should not dismiss the action because the defendant was not in compliance with the decree. As a result of plaintiff's assertions, the court stayed determination of the [o]rder to [s]how [c]ause until November, 2001 (which was 18 months after the "expiration" of the decree), during which time the court ordered the defendant to issue monthly reports to the Court concerning progress that the defendant had made, and was making, towards complying with the decree. The court recognized that "[i]n determining whether or not to terminate a consent decree, a district court should make sufficiently detailed findings of fact and conclusions of law under Rule 52(a), Fed. R. Civ. P., to advise the parties of the factual basis for its decision and permit informed appellate review." [193 F. Supp. 2d at 699-700 (quoting *Bradley v. Milliken*, 772 F.2d 266, 272 (6th Cir. 1985))]. **Consistent therewith, and although the *J.G.* court believed that the ending of the decree due to the agreement that jurisdiction would end by a certain date, the Court went into a multi-page legal analysis and factual findings of the defendant's compliance with the consent decree terms to justify the termination of the decree. [*Id.* at 702–07]. In other words, the court did not simply rely on the date in the consent decree when it supposedly lost jurisdiction as the sole justification for terminating the decree**.

*Id.* at 5-6 (underlined emphasis in original; bold emphasis added).

But the Court is not *required* to hold an evidentiary hearing and issue findings of facts and conclusions of law. In fact, the Consent Decree's **automatic termination provision** establishes that the opposite scenario was the negotiated agreement. Here, the parties negotiated for (and the Court approved) a specified end date with an automatic termination clause. And, again, if Plaintiffs believed the Court should extend the Consent Decree because of any alleged non-compliance by Defendant, it was Plaintiffs' obligation

to file a motion to compel compliance (or a motion for contempt or a motion for extension of time) *before* the Consent Decree expired.

As noted, the dismissal provision is mandatory (i.e., the action "**will be**" dismissed with prejudice, under [the] Federal Rules of Civil Procedure, Rule 41, within 30 days after expiration of the Term of this Decree). The dismissal is not conditioned on any rulings, findings, hearings, or other prerequisites. The Court need not certify that full compliance has occurred. In fact, other than entering an Order dismissing the case, the Court is not expected to do anything concerning the mandatory dismissal (which follows the automatic termination of the Consent Decree).

"A consent decree . . . should be strictly construed to preserve the bargained for position of the parties." *Williams*, 720 F.2d at 920. Here, the parties entered into a voluntary Consent Decree. One of the negotiated terms of that Consent Decree is the **automatic expiration** of that Consent Decree on a date certain. Another negotiated term is the mandatory dismissal (of the action) provision. At the parties' request, the Court extended the Consent Decree four times before it expired on September 30, 2022. Plaintiffs did not seek a fifth extension of time before the September 30, 2022 expiration date. Therefore, the Consent Decree expired on its own terms on September 30, 2022 and this action is due to be **dismissed with prejudice**.

**B.     Plaintiffs' Motions for Extension of Time and for Attorney's Fees [ECF Nos. 258–59]**

Because Plaintiffs' motion for attorney's fees and motion for extension of time were filed on October 1, 2022 (one day after the Consent Decree expired), the Court should **deny as moot** Plaintiffs' motions.

Plaintiffs state that Defendant violated the Consent Decree in two respects: (1) by failing to state its objections to the invoice in writing by the September 23, 2022 deadline (30 days after Plaintiffs' submission of their invoice to Defendant) and (2) by failing to pay any unobjected-to portions of the invoice by the same deadline. [ECF No. 258, p. 3]. But, again, if Plaintiffs believed Publix was not in compliance with the terms of the then-in-place Consent Decree, then Plaintiffs should have filed a *timely* motion notifying the Court of Defendants' non-compliance, before the expiration of the Consent Decree.[7]

Had Plaintiffs filed a motion for attorney's fees on September 30, 2022 or earlier, then the Court would have had jurisdiction to rule on that timely-filed fees motion, even after the September 30, 2022 deadline had passed. And, if Plaintiffs had filed a *timely*

---

[7]      Notably, in the past, Plaintiffs have filed timely notices alerting the Court of Defendant's alleged non-compliance with various provisions of the Consent Decree. *See, e.g.*, [ECF Nos. 212 ("Notice of Defendant's Failure to Comply with Sections 10.1, 10.2, 11.1.A and 11.1.B of Consent Decree"); 213 ("Notice of Defendant, Publix Super Markets, Inc.'s Failure to Comply with Section 18.1.F of the Consent Decree"); 214 ("Notice of Defendant, Publix Super Markets, Inc.'s Failure to Comply with Section 13 of the Consent Decree"); 215 ("Notice of Defendant, Publix Super Markets, Inc.'s Failure to Comply with Section 17.7 of the Consent Decree")]. Plaintiffs could have used that procedure in this instance and filed a notice of non-compliance on or before September 30, 2022. Plaintiffs failed to do so.

motion to extend the Consent Decree on September 30, 2022 or earlier, then the Court would have had jurisdiction to rule on that timely-filed motion for extension of time, even after the September 30, 2022 deadline. But, as it stands, Plaintiffs filed neither a motion for extension of time nor a fees motion on or before September 30, 2022.

Plaintiffs state that a 90-day extension of time is necessary because "**a final timing issue has arisen which wasn't adequately contemplated 18 years ago**, and the resolution of that issue is necessary to conclude the matter properly and completely." [ECF No. 259, p. 1 (emphasis added)]. But Plaintiffs knew of the September 30, 2022 deadline on March 11, 2021, when Judge Scola's Order [ECF No. 256] was docketed, extending the Consent Decree "until September 30, 2022[.]" And, by Plaintiffs' own assertion, they knew Defendant missed the September 23, 2022 deadline to raise objections and pay unobjected-to portions of the invoice.

Thus, while Plaintiffs' artfully-worded statement is *technically* true (i.e., the Consent Decree's September 30, 2022 expiration date was not known to the parties in 2005, when Judge Hoeveler approved the Consent Decree), it is of no moment because the Consent Decree's September 30, 2022 deadline *has* been known to Plaintiffs since March 11, 2021 and Plaintiffs' knew of Defendants' alleged non-compliance with the September 23, 2022 deadline to pay the invoice/raise objections.

Plaintiffs argue that because their counsel sent an invoice to defense counsel on August 23, 2022 (which was received by defense counsel the following day), the Court must extend the Consent Decree because otherwise, "it is impossible for the parties to engage in the . . . dispute resolution procedures." [ECF No. 259, p. 5].[8] But, if additional time was needed in order for the parties to engage in dispute resolution procedures (and comply with the terms of the Consent Decree), then Plaintiffs should have filed a timely motion on or before September 30, 2022.

Plaintiffs also cite Hurricane Ian and the agreed-to mediator's unavailability as reasons for the requested 90-day extension. *Id.* at 7 ("[T]he process has been frustrated, in part, by [H]urricane Ian pummeling the State of Florida and making Publix[']s representatives, who are based in Lakeland, unavailable at least part of the time. . . . Furthermore, the parties have been hampered in their ability to mediate this matter,

---

[8]     Plaintiffs assert that:

> **It is impossible for Class Counsel to present to Publix all fees and costs incurred through the end of the Consent Decree, yet still have time under the dispute resolution procedures to address those issues in the event of a dispute, which has now arisen**. **It is a result of that inadvertent timing conflict in the Consent Decree that the additional time requested herein is necessary.** Class Council estimates that the pending fees and costs issue can either be resolved by agreement or, if necessary, presented to the Magistrate Judge within 90 days. **It is for that reason, and for that reason solely, that the Plaintiffs request a brief 90 day extension of the Consent Decree to resolve the final fees and cost issue**.

[ECF No. 259, p. 5 (emphasis added)].

required as part of the dispute resolution process, due to the unavailability of the agreed-to mediator.").

The Undersigned takes judicial notice that Hurricane Ian made landfall in Florida on September 28, 2022. *See* U.S. National Oceanic and Atmospheric Administration's ("NOAA") National Environmental Satellite, Data, and Information Service ("NESDIS"), https://www.nesdis.noaa.gov/news/hurricane-ians-path-of-destruction (last visited Apr. 27, 2023).[9]  However, Hurricane Ian had no bearing on Plaintiffs' ability to file on CM/ECF a timely fees motion or a timely motion for extension of time on or before September 30, 2022. In fact, the Courthouse was open on September 30, 2022, the Undersigned presided over the morning criminal duty calendar, issued Orders in other cases, and received notices of electronic filings throughout that day. Hurricane Ian did not preclude Plaintiffs from timely filing their motions.

---

[9]     "A court can take judicial notice of weather data or lack of weather data contained in government weather bureau records." *Pate v. Norris*, No. 4:05CV00491 GH-JFF, 2007 WL 990698, at *19 n.10 (E.D. Ark. Mar. 29, 2007); *see also Sunflower Condo. Ass'n, Inc. v. Everest Nat'l Ins. Co.*, No. 19-CV-80743, 2020 WL 4501805, at *1 n.1 (S.D. Fla. Apr. 28, 2020), report and recommendation adopted, No. 19-CIV-80743-RAR, 2020 WL 5757085 (S.D. Fla. Sept. 28, 2020) ("[T]ak[ing] judicial notice that Hurricane Irma struck South Florida on or about September 10, 2017."); *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-22988-CIV, 2008 WL 5505415, at *4 (S.D. Fla. Oct. 21, 2008) ("[T]ak[ing] judicial notice of the fact that Hurricane Wilma struck South Florida on October 24, 2005, entering on the state's southwestern corner as a category 3 hurricane with winds nearing 105 knots and exiting near Jupiter, Florida as a category 2 hurricane with wind speed nearing 95 knots.").

Plaintiffs also note "that there have been four prior extensions of the Consent Decree, extending the Consent Decree by years (the most recent through September 30, 2022) so its terms could be properly implemented" and that "[e]ach of those were for far longer than the brief extension now requested by Plaintiffs." [ECF No. 263, p. 5].

But Plaintiffs ignore two important distinctions between the situation now and the Court's four earlier extensions. First the parties filed *joint* requests to extend the Consent Decree. [ECF Nos. 230; 243; 252; 255]. The Consent Decree expressly authorized its extension by joint agreement of the parties:

> **27. EXTENSION OF TIME.** The Parties may jointly agree and subject to approval of the Court where required, to reasonable extensions of time to carry out the provisions of this Decree. Nothing in this paragraph shall be construed to require any Party to grant a requested extension.

[ECF No. 255-1, p. 26].[10]

Second, in each earlier instance, the joint motion was filed *before* the Consent Decree was set to expire. *See* [ECF Nos. 230, p. 5 (joint motion filed on June 29, 2011, noting that "[t]he Consent Decree expires on July 28, 2011"); 243, p. 3 (joint motion filed on February 20, 2018, noting that "[t]he Consent Decree is set to expire on March 31, 2018"); 252, p. 3 (joint motion filed on September 27, 2019, noting that "[t]he Consent

---

[10]    Even if Publix objected to the extension, the Court could have granted an *opposed*, timely motion for extension of time, if the situation warranted it. Before its expiration, the Court had jurisdiction to enforce the Consent Decree, as a duly-issued Court Order. S*ee Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991) ("Courts have inherent power to enforce compliance with their lawful orders[.]").

Decree is scheduled to expire on September 30, 2019"); 255, p. 9 (joint motion filed on March 9, 2021, noting "the current March 30, 2021 expiration date")].

Moreover, in each earlier instance, the District Court granted the joint motions and extended the Consent Decree *before* it was set to expire. *See* [ECF Nos. 231 (entered July 25, 2011); 246 (entered March 5, 2018); 253 (entered September 27, 2019); 256 (entered March 11, 2021)]. Thus, in each earlier instance, the parties filed their joint motion (and the District Court granted the extension) *before* the Consent Decree was set to expire. In this instance, Plaintiffs filed their motion *after* the Consent Decree had expired. Therefore, the fact that the District Court has granted four earlier extensions, in time increments much longer than the requested 90 days, is of no import.

In their reply in support of their fees motion, Plaintiffs accuse Publix of "intentional[ly] fail[ing] to note Paragraph 28 of the Consent Decree or acknowledge that federal courts retain ancillary jurisdiction to consider collateral issues, such as motions for attorneys' fees, even after an action is no longer pending[.]" [ECF No. 267, p. 7 (footnote omitted)]. But, as discussed at length, the Consent Decree under which Plaintiffs seek attorney's fees has expired. It is Plaintiffs who ignore the Consent Decree's expiration date. Had Plaintiffs timely submitted the fees application before the Consent Decree had expired, then the Court would have had jurisdiction to issue an Order on the fees motion. But, at the risk of sounding like a broken record, that is not what happened. It is easy to understand why Plaintiffs would wish that paragraph 28 could be used to

rejuvenate a post-deadline, unauthorized fees motion. But, "as the ancient folk wisdom puts it, if wishes were horses, beggars would ride,"[11]  and Plaintiffs can find no horse here to ride to a fees victory.

## IV.   Conclusion

Because the Court no longer has jurisdiction over this action, the Court should **grant** Defendant's motion, enter a **with-prejudice dismissal** of this action, and **deny as moot** Plaintiffs' motions.

## V.   Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Robert N. Scola, Jr. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in this Report and Recommendations and shall bar the parties from attacking on appeal any factual or legal conclusions contained in this Report and Recommendations and to which they did not object, except upon grounds of plain error if necessary in the

---

[11]     *In re MacNeal*, No. 06-14202 BKCJKO, 2007 WL 917255, at *2 (Bankr. S.D. Fla. Mar. 22, 2007), subsequently aff'd, 308 F. App'x 311 (11th Cir. 2009).

interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley*

*v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); CTA11 Rule 3-1.

       **RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on May 3,

2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
Counsel of Record